581 F.2d 522
 Wesley J. LEONARD, Plaintiff-Appellant,
v.
EXXON CORPORATION and/or Nichols Construction Corporation,
and Fireman's Fund Insurance Company,
Defendants-Appellees.
Wesley J. LEONARD, Plaintiff-Appellant,
v.
EXXON CORPORATION et al., Defendants-Appellees.
 Nos. 76-2109, 76-2971.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 6, 1978.
 
 Donald G. Cave, James C. Dixon, Baton Rouge, La., for plaintiff-appellant.
 Gene S. Palmisano, Bernard J. Caillouet, John F. Reid, New Orleans, La., for Exxon Corp. in No. 76-2109.
 Gene S. Palmisano, Bernard J. Caillouet, Ivan D. Warner, III, Richard A. Chopin, New Orleans, La., for Exxon Corp. in No. 76-2971.
 Boris F. Navratil, Baton Rouge, La., for Nichols Const. Co. et al.
 Appeals from the United States District Court for the Middle District of Louisiana.
 Before GEWIN, GODBOLD and MORGAN, Circuit Judges.
 LEWIS R. MORGAN, Circuit Judge:
 
 
 1
 On August 26, 1974, Wesley Leonard was injured while working on a floating construction platform moored to the bank of the Mississippi River near Baton Rouge, Louisiana. Suit was filed alleging three theories of recovery: the Jones Act, 46 U.S.C. § 688 (1976); unseaworthiness of the platform; and maritime tort. Named as defendants were Nichols Construction Company, Leonard's employer, Fireman's Fund, Nichols' insurer, and Exxon Corporation. Determining that the construction platform was not a vessel, the court below granted summary judgment against Leonard on the Jones Act claim. With regard to plaintiff's remaining claims, judgment was entered for defendants following trial by the court.
 
 
 2
 In this appeal, Leonard asserts that the trial court erroneously granted summary judgment, ruling that the platform was not a vessel, and further that the remaining claims should have been tried by a jury. Finding no error, we affirm.
 
 
 3
 On numerous occasions this court has struggled with the problem raised by Leonard's first contention what is a vessel? As Judge Wisdom succinctly pointed out, there may be no precise answer:
 
 
 4
 Attempts to fix unvarying meanings have a firm legal significance to such terms as 'seaman,' 'vessel,' 'member(s) of a crew,' must come to grief on the facts. These terms have such a wide range of meaning under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case.
 
 
 5
 Offshore Company v. Robison, 266 F.2d 769, 779 (5th Cir. 1959). Thus has evolved the general rule in this circuit that such issues are sent to the jury:
 
 
 6
 (1) (I)f there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel, and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.
 
 
 7
 266 F.2d at 779. Because of the policy of providing an expansive remedy for seamen, submission of Jones Act claims to a jury requires a very low evidentiary threshold; even marginal claims are properly left for jury determination. Barrios v. Louisiana Construction Materials Company, 465 F.2d 1157, 1162 (5th Cir. 1972).
 
 
 8
 With this general approach in mind, we consider the structure on which Leonard was injured. The platform consisted of four flat-deck barges. These barges were not self-propelled, and could be moved only by the application of some external source of power. Three of the barges were placed end to end and lashed securely together. According to the trial court, this three-barge structure was moored "more or less permanently" to the shore by separate steel cables. The fourth barge, which served as a crane platform and as an access ramp to the other three barges, was located between the shore and the remaining barges. This fourth barge was connected to shore by a wooden ramp. To permit the crane to service each of the three outer barges, the three-barge platform would occasionally be untied and moved slightly forward or backward until properly positioned.
 
 
 9
 This court has previously held that a similar floating construction platform, which was neither designed for navigation nor engaged in navigation at the time of the accident, was, as a matter of law, not a vessel under the Jones Act. Cook v. Belden Concrete Products, Inc., 472 F.2d 999 (5th Cir. 1973). In Cook, as in the instant case, the barges were afloat, but that fact alone was not determinative of status. See also Blanchard v. Engine and Gas Compressor Services, Inc., 575 F.2d 1140 (5th Cir. 1978). Because appellant's proffered distinctions between Cook and the instant case are unpersuasive, and because we can find no material difference between the two cases, we are compelled to uphold the determination below that Leonard was not injured on a vessel. Accordingly, summary judgment was properly granted on that issue. Nonetheless, we note that Cook and now the instant case deviate from the general practice permitting Jones Act issues to be submitted to the jury, and accordingly should be applied restrictively.
 
 
 10
 Appellant next contends that the remaining counts should have been tried by a jury, rather than by the court. Appellant concedes that his original complaint asserted only maritime claims, for which no jury trial would have been available. However, pointing to the pre-trial order, which mentions diversity as a possible basis for jurisdiction, and to a brief colloquy at trial in which plaintiff requested reconsideration of the denial of the jury request, appellant asserts that the court and defendant had adequate notice of appellant's intention to abandon the admiralty claims and proceed solely in diversity, seeking recovery for negligence. We need not speculate about possible justifications for appellant's indirect attempts to provide notice rather than filing a formal motion because, in any event, there was no complete diversity between the parties. According to the complaint, both Leonard and the defendant Nichols were Louisiana residents. Thus, the trial court properly proceeded in admiralty. Appellant's other arguments on appeal are without merit and need not be discussed.
 
 
 11
 AFFIRMED.
 
 GODBOLD, Circuit Judge, dissenting:
 
 12
 I believe that whether the construction platform was a vessel was a jury issue and not properly decided on summary judgment as an issue of law.
 
 
 13
 The trial court and this court stand on Cook v. Belden Concrete Products, Inc., 472 F.2d 999 (CA5, 1973). The plaintiff in Cook was working on a single barge moored to the dock by ropes and used as the site for fabricating concrete barges. During fabrication the barge-platform was moved from time to time along the dock to pick up materials. Upon completion of construction of a concrete barge the platform would be towed a short distance into deeper water for launching the newly built barge. Plaintiff Cook was a carpenter engaged in erecting forms on the platform preparatory to pouring concrete for a barge under construction. The district court granted summary judgment for the defendant on the ground that the platform was not a vessel.
 
 
 14
 The underpinning of Cook is the analogy of the barge-platform to a dry dock used as a site for shipbuilding and to the plaintiff's activity thereon as a shipbuilder. In the present case four barges floating in the Mississippi River were being used as a site to weld together pipes into a completed pipeline and to transport the pipeline to its proposed location, a short distance away, and to lay it under navigable waters of the Mississippi where it would connect a fuel unloading point in the river with Exxon's shore facility.
 
 
 15
 The platform on which plaintiff was injured consisted of a "crane barge," moored lengthwise along the bank and connected to the bank by a ramp of boards and dirt. Outward from the "crane barge" were three other barges, lashed together end-to-end in a three-barge string parallel to the bank. Steel cables ran from the string of barges to dolphins on the bank. The crane on the shoreward barge was used for material handling, and this crane barge also was the means of access to the string of barges offshore. Actual work of welding the pipes was done on the offshore barges. Several times during fabrication the offshore string of barges was moved so that the crane on the shoreward barge could reach places of work on the offshore barges.[1]
 
 
 16
 The work being done on the outward barges, welding pipe, does not have the same connexity to shore as does shipbuilding it can as well be done aboard a ship as ashore. Once the pipeline had been fabricated the string of offshore barges was towed into deeper water, and the assembled pipeline was slipped off into its destined place underneath the navigable waters of the Mississippi. The assembled pipeline was in a traditional sense cargo, transported (albeit a short distance) through navigable waters to its destined location underneath navigable waters. This transportation function necessarily had to be performed for the pipeline to reach its permanent location, and it had to be performed by a moving vessel. The barge fabricated in Cook was not cargo in the traditional sense, and the manner of launching it was a matter of convenience rather than necessity.
 
 
 17
 Also the activity carried on by the plaintiff and the manner in which he was injured distinguish this case from Cook. Plaintiff was employed by the pipeline fabrication contractor and was in general charge of the job being done by contract with Exxon. Over a weekend eight Exxon fuel barges moored along the exposed side of the three-barge string. They tied up to a dock nearby and also put two lines to one or more of the offshore barges. When plaintiff arrived on Monday he noted the presence of the fuel barges and went aboard the fabrication barge string. He found that the steel cable running from one of these offshore barges to a dolphin ashore was unraveling and breaking. He feared that the strain imposed by the fuel barges, and their weight, and the wash of the current, would cause the line to break.
 
 
 18
 This was not the first time fuel barges had tied up to the offshore string, and those working on the fabrication barges objected to this because it pulled the fabrication barges away from the bank and tended to break the lines tying them to the bank. Also it caused the fabrication barges to buffet and slam against each other, which in turn dislocated and damaged the pipes on board.
 
 
 19
 A tug was called to remove the fuel barges. When the tug arrived it was suggested to plaintiff that the two lines from the fuel barges to the offshore string be untied. While plaintiff was engaged in untying one of these lines he was injured. Thus the purpose of plaintiff's activity at the moment of his injury involved disengaging the fuel barges from their mooring to the offshore string of barges because the mooring exposed the offshore barges to the perils of navigable water. The chief peril from which plaintiff was protecting the barges was the possibility that the unraveling barge-to-shore cable would break and the lashed-together string of barges would be carried away by the current. Also he was protecting the barges from a repetition of what had occurred in the past, the barges being banged and buffeted together with the result of damage to them and to the pipe stacked aboard.
 
 
 20
 Under these circumstances I think Cook is not controlling as a matter of law. Under the low threshold to which the majority opinion refers, the jury should have determined whether plaintiff was injured on a vessel.[2]
 
 
 21
 The defendant answers the conditions and circumstances which I have described with the disingenuous argument that the trial court disregarded as not believable plaintiff's testimony that an emergency situation existed which caused him to cast off the mooring line from fuel barges to the floating barge string. The short answer to this is, of course, that credibility is an issue for the jury and not for the trial judge on summary judgment.
 
 
 
 [1]
 The terms "platform" and "site" are used as convenient shorthand words without substantive significance. They convey neither more nor less permanence and unity to the four-barge operation than the facts impart
 It is not clear to me whether the outward string of three barges, lashed together, were connected in any manner to the crane barge or simply moored offshore of it and adjacent to it.
 
 
 [2]
 It is obvious that the majority are not quite comfortable with the conclusion they reach, since they say: "(W)e note that Cook and now the instant case deviate from the general practice permitting Jones Act issues to be submitted to the jury, and accordingly should be applied restrictively."