Bobby Joe SMITH, Plaintiff-Appellant,

v.

MASSMAN CONSTRUCTION COMPA-
NY and Travelers Insurance Compa-
ny, Defendants-Appellees.

No. 78–3789
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 19, 1979.

Gerald Thos. LaBorde, New Orleans, La.,
for plaintiff-appellant.

Leach, Paysse & Baldwin, Michael A.
Britt, New Orleans, La., for defendants-ap-
pellees.

Before CHARLES CLARK, GEE and
HILL, Circuit Judges.

PER CURIAM:

This appeal raises the question of wheth-
er the district court erred in granting de-
fendant's motion for summary judgment
holding that the structure on which plain-
tiff allegedly was injured was not a vessel
for purposes of the Jones Act, 46 U.S.C.A.
§ 688.

Appellant was working primarily as
a welder on a structure known as a caisson
when his alleged injury occurred. The cais-
son resembles a large topless steel box ap-
proximately 200 feet long, 84 feet wide, and
20 feet high. It had been pushed by two
boats from Belle Chasse, Louisiana where it
was built, to Luling, Louisiana where it was
secured by cables to a bank of the Mississip-
pi River approximately 500 feet down-
stream and 1300 feet west of the location
where it was later to be used to construct,
and actually to become part of, a concrete
bridge pier. At the bridge site, concrete

* Fed.R.App.P. 34(a); 5th Cir.R. 18.

was to be placed in portions of the caisson causing it to sink to the river bottom where it would form the base of a vertical bridge column. At the time of appellant's alleged injury, work was being done on the caisson to prepare it for its ultimate use.

The district court stated that the two most important factors in determining whether a structure is a vessel for purposes of the Jones Act are the purpose for which it is constructed and the business in which it is engaged. The court found that the caisson was built for the purpose of serving as part of a bridge and that it was "nothing more than a floating, rectangular piece of construction material." Record at 142. The court also noted that the caisson had no motive power, navigation lights, instruments, living quarters, bilge pumps, raked bow, or any other indications that it was to be used in navigation or commerce. The fact that some men or equipment may have been on the structure while it was under tow was not significant. The only similarities between the caisson and a vessel were the caisson looked somewhat like a barge and was afloat on the river.

Appellant argues that sufficient evidence was presented to suggest that the caisson was a vessel and that the district judge therefore erred in ruling, as a matter of law, that it was not. According to appellant, the project manager for the construction of the bridge, in responding to questions propounded by the court, stated that although the caisson was not "intended" to carry men or equipment, the company subsequently used it to transport men and equipment from the area where appellant was injured to the site where the caisson was to be used. Brief for Appellant at

6–7.[1] Appellant also states that the determination of whether something is a vessel is to be left to the finder of fact "even where the question appears to be relatively marginal," Brief for Appellant at 8, and that the question here is at least marginal.

A panel writing for this court recently reiterated the criteria for deciding this question as set forth by the Supreme Court in The Robert W. Parsons, 191 U.S. 17, 30, 24 S.Ct. 8, 48 L.Ed. 73 (1903): "In determining what is a vessel, we consider the purpose for which the craft is constructed and the business in which it is engaged," Blanchard v. Engine & Gas Compressor Serv., 575 F.2d 1140, 1142 (5 Cir. 1978), and the district court did apply this standard to the facts of this case.

The court in Blanchard noted that "[s]trange looking, special purpose craft for the oil and gas business, far different from traditional seafaring ships, have sometimes met these criteria," id., citing instances where this court held that a drilling barge with retractable legs, a submersible barge, and a submersible oil storage facility were vessels. Id. It held, however, that the purpose and business of the compressor buildings mounted on submersible barges in Blanchard had nothing to do with being Jones Act vessels, stating:

> It simply was cheaper to build these structures on shore and float them into position, rather than build them on site
>
> . . . .
>
> Gulf, moreover, did not intend to move these structures on a regular basis, as is done with submersible drilling rigs. . .

1. The deponent stated that workmen were on the caisson when it was moved from the river bank to its final location so that they could "tie it off" at "the location towers." Hummel depo. at 21. He stated he did not know whether equipment was on the caisson during this movement. Id.

Appellant and appellee disagree over what the project manager said about certain features of the caisson. As we read the deposition, Mr. Hummel stated that the caisson did not have an engine, a raked bow, navigation lights, navigation instruments, bits, stanchions, anchors, life rafts, living quarters, or a galley. Lines were attached from anchors on the bank to temporary plates on the caisson. Occasionally pumps would be brought onto the caisson to pump out rainwater and the like but the caisson itself did not "have bilge pumps". Ring bouys were installed on the caisson and fire extinguishers were placed on the structure because equipment with "fuel around it" was there. The caisson was not registered with the Coast Guard as a vessel. Hummel depo. at 12–16.

As another indication of the permanent nature of the submerged barges, they did not carry navigation lights or equipment, lifeboats or any lifesaving gear, nor were they registered with the Coast Guard as vessels. Unlike the barges in *Gray* [*Producers Drilling Co. v. Gray*, 5 Cir., 361 F.2d 432] and *Hicks* [*Hicks v. Ocean Drilling and Exploration Co.*, 5 Cir., 512 F.2d 817], furthermore, these barges did not have crew quarters or their own bilge pumps to remove water if they were raised. The barges did not even have a raked bow for ease in transport. In fact, Gulf emphasized that they could be moved, if at all, only under the most favorable weather conditions.

*Id.* at 1143.

The caisson here was constructed for the purpose of being both a form for concrete in a bridge pier and a part of the pier itself, not for the purpose of being a Jones Act vessel. At the time of the alleged injury it was "engaged" in the "business" of being prepared to serve those purposes. The transportation of men and material, if any occurred, was incidental.[2]

The court in *Blanchard* noted that its holding might have been different if plaintiff had been injured while the structures were being floated into position. *Id.* at 1143 n.5. Appellant in the present case does not allege an injury during transportation so we need not discuss this point.

■ It is true that "submission of Jones Act claims to a jury requires a very low evidentiary threshold; even marginal claims are properly left for jury determination." *Leonard v. Exxon Corp.*, 581 F.2d 522, 524 (5th Cir. 1978). For the reasons stated above, however, the structure here, like the structure in *Leonard*, was, as a matter of law, not a vessel under the Jones Act.

AFFIRMED.

---

**2.** The Court of Appeals for the Sixth Circuit held that a vehicular tunnel section that was floating and moored to a pier was not a Jones Act vessel and that the district court was therefore correct in dismissing the claims. *Hill v. Diamond*, 311 F.2d 789 (5th Cir. 1962). The court in that case relied on the fact that the tunnel section was never intended for use as a vessel and the fact that at the time of the injury the tunnel section was undergoing construction. *Id.* at 792–93. Because of our findings as to the purpose and business of the caisson, we need not determine whether it was undergoing construction or discuss the impact of such a finding.