**J. D. WATKINS, Plaintiff-Appellee,**

v.

**PENTZIEN, INC., Defendant-Appellant.**

**No. 81–2023**

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Nov. 5, 1981.

Rehearing Denied Dec. 1, 1981.

Schirmeyer & Kratochvil, L. Glen Kratochvil, T. G. Schirmeyer, Houston, Tex., for defendant-appellant.

Jones, Jones & Baldwin, Doyle Curry, Marshall, Tex., for plaintiff-appellee.

Before AINSWORTH, REAVLEY and RANDALL, Circuit Judges.

PER CURIAM:

The issue in this appeal is whether the two barges on which the appellee, J. D. Watkins, was working at the time of his injury were vessels in navigation, thereby entitling Watkins to the protection of the Jones Act and the general maritime law. The district judge found that they were. We hold that, as a matter of law, they were not vessels in navigation. Accordingly, we reverse the judgment of the district court awarding damages to Watkins on his Jones Act and general maritime law claims.

J. D. Watkins, an employee of Pentzien, Inc., was injured at work when he stooped over to pick up a chunk of tar from the deck of the barge on which he was working. Watkins had intended to throw the piece of tar toward the tar pots that he attended on the deck of one of the barges. But, unexpectedly, it stuck to other chunks of tar and, while trying to lift it, he hurt his back.

Watkins filed this action against Pentzien in the United States District Court for the Eastern District of Texas. His complaint invoked the admiralty and maritime jurisdiction of the district court and included a Jones Act claim with added counts under the general maritime law for unseaworthiness and maintenance and cure. After a trial, the district judge found that Watkins was a seaman protected by the Jones Act and that the barge upon which he was

working qualified as a vessel under the Jones Act. The district judge also resolved Watkins' general maritime law claims in his favor. A final judgment was entered awarding Watkins $75,000 in damages against Pentzien. Pentzien appeals.

 In order to qualify for coverage under the Jones Act, a worker claiming seaman status must satisfy three criteria:

(1) he must have a more or less permanent connection with (2) a vessel in navigation and (3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance during its movement or during anchorage for its future trips.

*Guidry v. South Louisiana Contractors, Inc.,* 614 F.2d 447, 452 (5th Cir. 1980). Whether these criteria are satisfied is normally a question for the trier of fact. *Beard v. Shell Oil Co.,* 606 F.2d 515, 517 (5th Cir. 1979). Nonetheless, we also have recognized that the undisputed material facts may establish as a matter of law that an individual is not a Jones Act seaman. *Guidry v. Continental Oil Co.,* 640 F.2d 523, 528–29 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981). In such a case, it is proper for this court to determine seaman status. *See Holland v. Allied Structural Steel Co.,* 539 F.2d 476, 479–80 (5th Cir. 1976), *cert. denied,* 429 U.S. 1105, 97 S.Ct. 1136, 51 L.Ed.2d 557 (1977).

 As noted at the outset, we have predicated our decision in this appeal solely on whether the two barges on which Watkins was employed were vessels in navigation. With this in mind, we turn to the undisputed material facts.

Watkins was employed on two barges which were used as a construction platform on which sections of concrete-coated pipeline were welded together. These barges, each 200 feet long and forty feet wide, were placed end-to-end. They were tightly secured to each other on both the port and the starboard sides by steel cables. To make the barges level with each other, "I" beams were laid across their decks. One end of each "I" beam was welded to the deck of one of the barges.

After the barges had been fastened together, they were moved by tug into the Sabine River and placed at a right angle to the bank. In order to keep interference with shipping and navigation to a minimum, the barges were pushed close to the bank of the river where a slip had been dug to hold them. Four metal poles, known as spuds, were dropped to the bed of the river. The spuds were fastened to the barges by collars welded to the barges. The end of the barge nearest the bank was lowered to the level of the water by flooding several of the barge's rear compartments.

When operating, concrete-coated sections of pipe were brought to the end of the barge protruding into the river. The sections of pipe were placed on a conveyor, welded to the end of the pipeline on the barge, coated with a sealant, and eased off the end of the barge nearest to the river bank into a canal cut through the marsh. This process was repeated until a completed pipeline extended from the barge into the marsh.

We find that the two barges on which Watkins was hurt are factually indistinguishable from the pipeline construction platform on which the plaintiff in *Leonard v. Exxon Corp.,* 581 F.2d 522 (5th Cir. 1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 397 (1979), was injured. In *Leonard,* we described the platform as

four flat-deck barges. These barges were not self-propelled, and could be moved only by the application of some external source of power. Three of the barges were placed end to end and lashed securely together. According to the trial court, this three-barge structure was moored "more or less permanently" to the shore by separate steel cables. The fourth barge, which served as a crane platform and as an access ramp to the other three barges, was located between the shore and the remaining barges. This fourth barge was connected to shore by a wood-

en ramp. To permit the crane to service each of the three outer barges, the three-barge platform would occasionally be untied and moved slightly forward or backward until properly positioned.

581 F.2d at 524. The dissent also noted that "[o]nce the pipeline had been fabricated the string of offshore barges was towed into deeper water, and the assembled pipeline was slipped off into its destined place underneath the navigable waters of the Mississippi." *Id.* at 525 (Godbold, J., dissenting).

In *Leonard*, the district judge had granted summary judgment against the plaintiff on his Jones Act claim finding as a matter of law that the pipeline construction platform on which he worked was not a vessel. We affirmed on the basis of a prior opinion in which we held that "a similar floating construction platform, which was neither designed for navigation nor engaged in navigation at the time of the accident, was, as a matter of law, not a vessel under the Jones Act." *Id.* at 524 (citing *Cook v. Belden Concrete Products, Inc.*, 472 F.2d 999 (5th Cir. 1973), *cert. denied*, 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973)).

Our decision in *Leonard* controls the outcome of this appeal. The similarities between the pipeline construction platform described in *Leonard* and the structure on which Watkins was injured are unmistakable. Both were used to weld sections of the pipe together. Both consisted of barges fastened together. In neither case could the barges move under their own power. Both platforms had to be towed from place to place by a tug. In both instances the platforms were affixed "more or less per-

manently." *Leonard*, 581 F.2d at 524. In the instant case, the barges were held in place near the bank of the Sabine River by the spuds; in *Leonard*, they were attached close to the bank of the Mississippi by steel cables.[1] We hold, therefore, as we did in *Leonard*, that Watkins is not covered by the Jones Act as the structure on which he was injured was not a vessel in navigation. *See Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980).

Our decision that the two-barge structure on which Watkins was injured was not a vessel in navigation also disposes of his claims under the general maritime law. "For the doctrine of unseaworthiness to apply in a personal injury case, . . . the vessel [must] be in navigation." 2 M. Norris, Maritime Personal Injuries § 321, at 69 (3d ed. 1975). In order to recover for maintenance and cure, the worker must be "employed on what can be termed a 'vessel' for admiralty purposes." 1B Benedict on Admiralty § 44, at 4–12 (7th ed. 1980). We said in *Cook v. Belden Concrete Products, Inc.*, 472 F.2d 999, 1002 (5th Cir. 1973), *cert. denied*, 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973), the decision upon which *Leonard* was predicated, that a barge used as a floating construction platform was not a vessel in navigation entitling an injured worker to claim under the general maritime law. Therefore, because the structure on which Watkins was injured was not a vessel in navigation, Watkins may not recover under the general maritime law. *See* G. Gilmore & C. Black, The Law of Admiralty § 6–21, at 329 (2d ed. 1975).

1. The only possible difference between the pipeline construction platform in *Leonard* and the one on which Watkins was injured is their accessibility. Although both were near the bank of a river, in *Leonard* the barges on which the plaintiff was injured could be reached by crossing over a ramp built from the bank of the river onto and across the crane barge to the three barges on which the pipeline was fabricated. In this case, as the bank of the Sabine River near the barges consisted of marshland, Watkins was transported to and from his workplace by tug each day. The status of a structure as a vessel in navigation, however, is unaf-

fected by its accessibility to those who are assigned to it. The critical inquiry is "the purpose for which the craft was constructed and the business in which it is engaged." *Cook v. Belden Concrete Prods., Inc.*, 472 F.2d 999, 1001 (5th Cir. 1973) (citing *The Robert W. Parsons*, 191 U.S. 17, 30, 24 S.Ct. 8, 12, 48 L.Ed. 73 (1903)), *cert. denied*, 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973). *Accord, Hicks v. Ocean Drilling & Exploration Co.*, 512 F.2d 817, 823 (5th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639 (1976); *Berfect v. American Commercial Barge Lines*, 509 F.Supp. 734, 736 (E.D.La.1981).

The undisputed facts in this case establish as a matter of law that Watkins neither is a Jones Act seaman nor is entitled to recover for his injuries under the general maritime law. The decision of the district court is REVERSED and the case is REMANDED for entry of judgment in favor of Pentzien, Inc. on Watkins' Jones Act and general maritime law claims.

REVERSED.