Joseph T. COLOMB, Plaintiff-Appellant,

v.

TEXACO, INC., et al., Defendant-Appellee.

No. 82-3556.

United States Court of Appeals, Fifth Circuit.

July 16, 1984.

Rehearing Denied Aug. 15, 1984.

---

Singerman, Cosentino, Broussard, Toups & Troyer, John P. Cosentino, Olden C. Toups, Jr., Owen J. Bradley, New Orleans, La., for plaintiff-appellant.

Jones, Walker, Waechter, Portevent, Carrere & Denegre, Fred E. Salley, Grady S. Hurley, Stewart E. Niles, Jr., New Orleans, La., for defendant-appellee.

Before TATE, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this maritime personal injury action, both plaintiff and defendant appeal a judgment entered on a modest verdict for the plaintiff. We affirm in part and reverse in part.

I

Plaintiff, Joseph T. Colomb, III was employed by Texaco and worked aboard the Drill Barge ERIS as a roughneck, rotary helper, and relief motorman for eighteen months prior to the accident of June 2, 1977. He worked twelve hours per day, six days on and six days off.

The ERIS was an inland, submersible, spud drilling barge designed to drill in inland bays and waterways. In order for the ERIS to perform her work, her ballast tanks were flooded and she was sunk to the bottom of the waterway. Once she was sunk, spuds were driven into the bed of the waterway. At the time of Joseph Colomb's accident, the ERIS was drilling in navigable waters at the end of a canal off inland waters of Louisiana in approximately eight feet of water. She had been in a working position for fifteen and a half days.

On the night of this accident, Mr. Colomb was dispatched to a cargo barge alongside the Barge ERIS, to receive pipe from the ERIS and spread the pipe in even layers on the deck of the cargo barge.

While Mr. Colomb and a fellow employee, Shannon Baratini, were rolling a joint of pipe across the deck of the cargo barge, Mr. Colomb was either struck by a joint of pipe or stumbled over a joint of pipe. He fell forward and twisted his left knee which resulted in an approximate 15% permanent impairment of function in the knee.

Plaintiff initiated this action against his employer Texaco, under the Jones Act and general maritime law and alternatively under 33 U.S.C. § 905(b). Mr. Colomb tried his case against Texaco on the theory that his injuries were caused by the negligence of his fellow employee, Baratini and the negligence of Texaco in furnishing an unsafe place to work due to a slippery deck and inadequate lighting on the service barge.

The trial court denied all motions for directed verdict and permitted all issues—status, liability and quantum—to go to the jury. The jury, in a special verdict, concluded that the Barge ERIS was not a vessel in navigation, that Mr. Colomb was not a seaman, that his injuries had been proximately caused by his own negligence (90%), as well as that of Texaco (10%), and fixed total damages at $50,000.

All post-trial motions were denied and both sides appealed. Three issues are presented by this appeal: (1) whether the trial court erred in denying plaintiff's motion for a directed verdict on the status issue; (2) if so, whether the jury applied the appropriate standard for negligence and contributory negligence; and (3) whether the trial court erred in disallowing evidence on inflation.

II

Colomb contends that the Barge ERIS is a vessel in navigation as a matter of law, he was a seaman and the trial court erred in denying Colomb's motion for a directed verdict on the status issue.

We agree. This circuit's test for seaman status for oilfield workers working on navigable waters was enunciated in the seminal case of *Offshore Company v. Robison,* 266 F.2d 769, 779 (5th Cir.1959), and requires the satisfaction of two conditions: (1) permanent assignment to a vessel and (2) performance of duties which contribute to the function or mission of the vessel. The court defined the type "vessel" contemplated in the first requirement as follows: "(including special purpose structures not usually employed as a means of transport by water but designed to float on water)."

The only element in serious dispute is whether the Barge ERIS is a vessel.

The standard for determining whether a special purpose craft is a vessel under the Jones Act, is consideration of the purpose for which the craft is constructed and the business in which it is engaged. *Barrios v. Engine and Gas Compressor Services, Inc.*, 575 F.2d 1140, 1142 (5th Cir.1978).

The Barge ERIS was constructed for the purpose of going to various drilling locations to drill or work over oil and gas wells. It was engaged in that business at the time of the accident. According to the undisputed testimony, the Barge ERIS was highly mobile, it was routinely floated to a particular location and submerged; it remained submerged and in a fixed location for short periods while it completed a drilling or workover job. It was then refloated and towed to the next job site.

In the following cases we have held that the oilfield worker permanently assigned to a submersible drilling barge or other special purpose vessel was a seaman as a matter of law: *Producers Drilling Co. v. Gray*, 361 F.2d 432 (5th Cir.1966); *Doucet v. Wheless Drilling Co.*, 467 F.2d 336 (5th Cir.1972); *Hicks v. Ocean Drilling & Exploration Co.*, 512 F.2d 817 (5th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639 (1976). These cases are controlling.

*Cook v. Belden Concrete Products, Inc.*, 472 F.2d 999 (5th Cir.), *cert. denied*, 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973); *Leonard v. Exxon Corp.*, 581 F.2d 522 (5th Cir.1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 397 (1979), and *Watkins v. Pentzien, Inc.*, 660 F.2d 604 (5th Cir.1981), *cert. denied*, 456 U.S. 944, 102 S.Ct. 2010, 72 L.Ed.2d 467 (1982) hold that barges rendered immobile for extended periods of time and used as construction platforms or dry docks are not vessels in navigation. These cases are not pertinent in deciding whether a highly mobile drilling barge is a vessel.

Under the established law of this circuit, the Barge ERIS was a vessel in navigation and plaintiff was a seaman as a matter of law. Consequently, the district judge erred in declining to direct a verdict accordingly.

### III

Colomb argues that because the trial judge erred in not directing a verdict on the status issue, the jury applied the wrong legal standard in assessing Texaco's conduct. Colomb asserts that because the jury concluded he was a longshoreman, it applied to Texaco's conduct an unfavorable, restrictive negligence standard applicable under the LHWCA rather than the more favorable—easier to prove—standard applicable under the Jones Act.

Texaco contends that Joseph Colomb was not prejudiced in this respect because regardless of the standard used the jury found that Texaco was negligent. Texaco asserts that since the jury concluded the plaintiff met his burden of proving a more stringent variety of negligence under 905(b), plaintiff would have clearly satisfied his burden under the more relaxed Jones Act standard.

Texaco's position is correct. A finding of negligence under the more stringent standard of § 905(b) renders harmless the failure to apply the less demanding Jones Act and general maritime law standards.

Colomb further argues that the jury's verdict is also flawed with respect to its contributory negligence finding because of the application of the wrong legal standard. This argument is predicated on the difference in the legal standard applicable to the plaintiff's conduct under the Jones Act and the Longshoremen's and Harbor Workers' Compensation Act. Under the Jones Act, while a seaman has a duty to protect himself, this duty is slight. *Savoie v. Otto Candies Inc.*, 692 F.2d 363 (5th Cir.1982); *Thezan v. Maritime Corp.*, 708 F.2d 175 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984); *Bobb v. Modern Products, Inc.*, 648 F.2d 1051 (5th Cir.1981). The longshoremen's duty, on the other hand, is to use reasonable care under the circumstances. *Santos v. Scindia Steam Navigation Co.*, 598 F.2d 480 (9th Cir.1979) *aff'd and remanded on other grounds* 451 U.S. 156,

101 S.Ct. 1014, 68 L.Ed.2d 1 (1981); *Lopez v. a/s d/s Svendborg*, 581 F.2d 319 (2nd Cir.1978).

Although the trial judge did not instruct the jury with respect to this difference in standard the plaintiff neither objected to the charge as given nor submitted a suggested charge on the issue.[1]

Rule 51 of the Federal Rules of Civil Procedure provides:

> ... No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

We are precluded from considering this contention unless, in spite of the failure to object, the absence of a charge defining the different legal standard was so fundamental that it constitutes plain error. *Bissett v. Ply Gem Industries*, 533 F.2d 142 (5th Cir.1976); *DeJoris v. U.S.*, 409 F.2d 2 (5th Cir.), *cert. denied*, 396 U.S. 830, 90 S.Ct. 82, 24 L.Ed.2d 80 (1969). Plain error is found if "the deficient charge is likely responsible for an incorrect verdict which in itself creates a substantial injustice." *Jamison Co., Inc. v. Westvaco Corp.*, 526 F.2d 922, 933 (5th Cir.1976). This court in *Rodrigue v. Dixilyn Corp.*, 620 F.2d 537 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981) stated: "The plaintiff must establish that the instruction was an incorrect statement of law and that it was probably responsible for an incorrect verdict, leading to substantial injustice."

■ We do not consider this omission to be such an error. The trial court instructed the jury with respect to contributory negligence under both the Jones Act and 905(b). The court's charge was adequate as to the general law relating to contributory negligence. *Bisset v. Ply Gem Industries, Inc.*, 533 F.2d 142 (5th Cir.1976). The difference in the standard given in the

charge and that applicable under the Jones Act is one of degree and not so prejudicial as to be manifestly unjust. This is not a case where an error was so plain and fundamental as to withhold from the jury the essential ingredients of a cause of action or defense.

Additionally, the jury's findings of 90% contributory negligence on the part of the plaintiff is reasonably supported by the evidence and we are unable to say that the instruction as given was responsible for an incorrect verdict.

Plaintiff testified that while his back was turned, a rolling pipe hit him from behind and caused him to fall; however, Colomb's credibility was challenged when the jury was exposed to other versions of the accident given by Colomb. Joseph Colomb told Dr. Nutik that the accident occurred when he lost his balance and fell. This was also reported to Marilyn Deich. Shortly after the accident, an accident report was completed which stated that Joseph Colomb lost his footing while rolling pipe.

Plaintiff's testimony that the barge was slippery and muddy and inadequately lit was not supported by Baratini and other witnesses who testified. The record amply supports a finding that plaintiff and Baratini were performing a routine task of rolling a joint of pipe and that due primarily to plaintiff's own inattention, he stumbled and fell. The record raises no substantial issue of improper tools or equipment or the necessity for special training to perform this routine job.

Accordingly, we conclude that the failure to give instructions which distinguished the standard of care owed by plaintiff as a seaman as opposed to a longshoreman was error but does not amount to plain error.

## IV

Colomb argues that the trial court erred in ruling inadmissible testimony from his

---

1. The trial court's charge on the defendant's comparative negligence defense to both the Jones Act and § 905(b) claims consisted of giving a general definition of negligence and an explanation of how the court would reduce the

award in the event plaintiff was found at fault. No distinction was made between the standard of care owed by plaintiff as a seaman as opposed to a longshoreman.

economist as to the effect of inflation on loss of future wage earning capacity. Texaco asserts that since the jury only awarded $50,000, it is safe to infer that the jury made no award for lost future wages since $130,000–$350,000 was claimed for this item. Since only a general verdict was returned, it is impossible to determine whether an award was made for future lost wages and we must assume that the award includes loss of future earning capacity.

Since this case was on appeal when *Culver I*, 688 F.2d 280 (5th Cir.1982) was announced, the teaching of *Culver I* and *Culver II*, 722 F.2d 114, 123 (5th Cir.1983) requires that we reverse and remand for trial under the current law contained in *Culver II* if the issue was preserved by timely objection. *See also Martin v. Missouri Pacific Railroad Co.*, 732 F.2d 435 (5th Cir.1984).

Although no specific objection was made to the jury charge, Colomb proffered the testimony of an economist relative to the effect of inflation on Colomb's loss of future wages following a ruling by the trial judge excluding this testimony. Colomb therefore properly preserved his objection for appeal.[2]

### V

For reasons stated above, we AFFIRM the judgment of the district court in all respects except for damages. We VACATE the damage award and REMAND for retrial on damages under the principles announced in *Culver II.*

---

**2.** We have considered three additional errors assigned by Colomb to evidentiary rulings by the trial court and find no error or abuse of discretion.

Colomb first contends that statements made by Colomb to Marilyn Deich, a drug abuse counselor, were privileged and should not have been disclosed. Even if the communications were privileged under La.R.S. 37:2714, the record amply supports a finding that Colomb waived the privilege.

It was within the broad discretion of the trial court to conclude that Mr. Baratini (a former employee of Texaco and a friend of plaintiff) was not "identified with Texaco" under Fed.R. Evid. 611.

The only objection made to the introduction of the Texaco accident report was that the typewritten copy was admitted instead of the handwritten original. Mr. Fazzio, the author of the accident report, testified that the copy contained the same information as the discarded original. The ruling was not clearly erroneous.