**Leon J. BRUNET, Jr.,**
**Plaintiff-Appellant,**

v.

**BOH BROTHERS CONSTRUCTION CO.,**
**INC., Defendant-Appellee.**

No. 83–3120
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1983.

---

could he do so. *Shank v. Spruill,* 406 F.2d 756 (5th Cir.1969); *Jones v. Bales,* 58 F.R.D. 453,

460 (N.D.Ga.1972), *aff'd* 480 F.2d 805 (5th Cir. 1973).

Joshua A. Tilton, Baton Rouge, La., Kevin A. Galatas, New Orleans, La., for plaintiff-appellant.

Bienvenu, Foster Ryan & O'Bannon, H.F. Foster, III, New Orleans, La., for defendant-appellee.

Before BROWN, TATE and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Leon Brunet sued his employer Boh Brothers Construction Co. under the Jones Act and general maritime law seeking damages for injuries sustained aboard a pile-driving barge. The district court granted summary judgment for Boh Brothers on the ground that the barge was not a Jones Act vessel. Brunet appeals. Finding that the court erred in holding as a matter of law that the barge was not a vessel, we reverse and remand.

Brunet's accident occurred aboard a pile-driving barge known as the Barge 4000 Ringer. The barge consisted of several interlocking flexi-float platforms and carried a 150 ton crane that was being used to drive pilings into marshland near Galliano, Louisiana. The barge had been moved to this jobsite by tugboats and had been so moved within the Gulf region four times during the six months preceding the accident. At the time of the accident, the barge was moored by cables running from deck engines to pilings driven into the marsh. It was not self-propelled but could move short distances when the deck engines pulled the cables. The barge had no crew quarters but did have a shack that the workmen used for storing tools, avoiding inclement weather, and eating an occasional meal. Brunet and his fellow employees were expected to clean and repair the barge and to assist in the preparation of its movement to another jobsite.

In holding that this barge was not a vessel as a matter of law, the district court relied primarily on *Cook v. Belden Concrete Products, Inc.,* 472 F.2d 999 (5th Cir.1973) and its progeny. *Cook* was injured on a floating construction platform moored in navigable waters and used to fabricate concrete barges. Rejecting his contention that the platform was a vessel because it was capable of limited movement in navigable waters, the court held that the determinative question of a craft's status was not the permanence of fixation but "the purpose for which the craft was constructed and the business in which it is engaged." *Id.* at 1001 (*quoting The Robert W. Parsons,* 191 U.S. 17, 30, 24 S.Ct. 8, 12, 48 L.Ed. 73 (1903)). The construction platform was found to not be a vessel because "it was not

designed for transportation of passengers, cargo, or equipment from place to place across navigable waters." *Id.* at 1002. From *Cook,* we reasoned in *Leonard v. Exxon Corp.,* 581 F.2d 522 (5th Cir.1978) and *Watkins v. Pentzien, Inc.,* 660 F.2d 604 (5th Cir.1981), that pipeline construction platforms were not vessels. The district court here analogized this case to *Cook, Leonard,* and *Watkins,* holding that "[t]he flexi-float platform was designed primarily for and engaged in pile-driving activity, not transportation in commerce of cargo, equipment and passengers across navigable waters."

We hold that the *Cook* line of cases does not control here. As the *Leonard* court observed, "*Cook* and now the instant case deviate from the general practice of permitting Jones Act issues to be submitted to the jury, and accordingly should be applied restrictively." 581 F.2d at 524. That observation flowed from the oft-repeated admonition in *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959) that

> [a]ttempts to fix unvarying meanings [having] a firm legal significance to such terms as "seaman," "vessel," "member[s] of the crew," must come to grief on the facts. These terms have such a wide range of meaning under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case.

*Id.* at 779. Central to the *Cook* line was the analogy of the barges to dry docks used for shipbuilding or to platforms used for pipeline construction. The Barge 4000 Ringer, however, lacks the *Cook* similarity to dry docks or construction platforms. The barge by necessity is designed to transport a pile-driving crane across navigable waters to jobsites that cannot be reached by land-based pile-drivers. Only an expansive reading of *Cook* could cover this barge, yet *Cook* must be read narrowly. The district court erred in applying it here.

The district court found, and Boh Brothers now argues, that transportation of the pile-driving crane from one jobsite to another is "only incidental to the platform's pile-driving function." While we agree that the barge was used more often to support the crane than to transport it, we cannot agree that the transportation function was so "incidental" as to warrant a conclusion that the barge was not a vessel as a matter of law.

This case is materially different from others in which we have found a craft's transportation function to be incidental to the purpose for which it was designed. This was not a platform built ashore and moved to a permanent worksite. It was instead built with mobility over navigable waters as one of its features. In *Blanchard v. Engine & Gas Compressor Service,* 575 F.2d 1140 (5th Cir.1978), for example, we held that buildings mounted on "virtually permanently sunken barges" were not Jones Act vessels. Although the structures had been moved to their present location, we noted that their owner did not intend to move them on a regular basis because the barges had been submerged and then attached to the bottom of the shallow Gulf waters. Similarly, we held in *Smith v. Massman Construction Co.,* 607 F.2d 87 (5th Cir.1979), that a structure known as a caisson was not a vessel even though it had carried men and equipment while under tow. Noting that the caisson was constructed "for the purpose of being both a form for concrete in a bridge pier and part of the pier itself," we concluded that "[t]he transportation of men and material, if any occurred, was incidental." *Id.* at 89 (footnote omitted). Most recently, we held in *Fox v. Taylor Diving & Salvage Co.,* 694 F.2d 1349 (5th Cir.1983), that a submarine pipe alignment rig known as SPAR was not a vessel. Although the SPAR was frequently towed from one location to another, we concluded that it was not designed for navigation or commerce because "its sole purpose is to repair the pipeline that *is* used in commerce. Its function is that of a tool, not a vessel." *Id.* at 1354 (emphasis in original).

Unlike the structures in these cases, the Barge 4000 Ringer was not constructed to serve only as an immovable platform for the crane or as a "tool" to be used in driving piles. Rather, the barge was de-

signed both to support the crane and to transport it on a fairly regular basis from one jobsite to another. Indeed, a Boh Brothers foreman testified that the Barge 4000 Ringer had been moved to four different jobsites within the Gulf Coast area in the six months preceding the accident. That this barge may have been moored at the Galliano site for several months does not affect the conclusion that it was designed for the transportation of equipment over navigable waters. *See Cook v. Belden Concrete Products, Inc.*, 472 F.2d at 1001. In sum, we cannot agree that the transportation function of this barge was "incidental" within the contemplation of *Blanchard*, *Smith*, and *Fox*. *See also, Hicks v. Ocean Drilling and Exploration Co.*, 512 F.2d 817 (5th Cir.1975).

In reversing the summary judgment, we do not decide that the barge is a vessel or that Brunet is a seaman. We hold only that the question whether the barge is a Jones Act vessel was integral to the jury question of seaman status. Accordingly, we reverse and remand for further proceedings.

REVERSED AND REMANDED.