Plaintiff appeals from the trial court's entry of judgment notwithstanding the verdict (JNOV) in defendant's favor in this suit for negligence under the Jones Act[1] and for unseaworthiness under general maritime law. *Page 532 
Plaintiff was employed by defendant as a concrete finisher to work on the bridges on Interstate Highway 65 over the Tensaw and Mobile Rivers. When plaintiff reported to work each morning, he was taken by boat to Barge No. 103, which was secured in the river by spuds, metal poles driven into the river bed. The barge, which was 120 feet long by 49 feet wide, contained all of the equipment needed for repairing the bridge pilings. Specifically, the barge carried a large crane and a compressor used to operate an air jackhammer.
Plaintiff and the other men working from the barge would stay on the barge all day, including the lunch break. They also remained on the barge while it was moved to different locations. The barge had no locomotive power but was moved by tugboat on the average of twice per week. The men assisted in the barge's movement by hooking and unhooking cables to the sides of the barge and hooking the crane to the spuds. They also performed other minor duties on the barge, such as cleaning and oiling concrete forms and lumber.
The majority of plaintiff's time at work, however, was spent in a cofferdam, a rectangular structure driven into the river bed and rising 3 feet above water level, which kept water away from the footing while the men worked on it. The men went from the barge into the cofferdam by means of a ladder.
On August 4, 1978, plaintiff fell from the ladder into the cofferdam, a distance of approximately 18 feet, and was injured. Plaintiff claimed that the ladder was too short and was not properly secured to the top and sides of the cofferdam.
Aetna Life and Casualty Insurance Company, defendant's workmen's compensation carrier, paid plaintiff's medical expenses, totaling $8,117.17, and also paid plaintiff $20,561.25 as temporary total disability and permanent partial disability based on a 20% loss of use of his leg and a 30% loss of use of his foot. Plaintiff filed the present action in Mobile County on April 7, 1980. On July 22, 1980, he filed another action in Baldwin County under the Alabama Workmen's Compensation Act. The second action was continued pending the outcome of the first. The trial court in the present case sustained plaintiff's motion in limine, excluding any reference to the benefits and medical expenses already paid to plaintiff. However, the court and the attorneys indicated that the insurance carrier would receive credit for what had already been paid to plaintiff if he recovered in this lawsuit.
The jury returned a verdict in plaintiff's favor in the amount of $125,000. However, the trial court granted defendant's motion for JNOV on the ground that plaintiff was not a seaman. Plaintiff has appealed from the JNOV. In its cross-appeal, defendant argues: (1) the trial court erred in refusing to give certain charges to the jury concerning plaintiff's status as a seaman; (2) the trial court erred in not granting defendant's motion for directed verdict on the issue of unseaworthiness; (3) the trial court erred in overruling defendant's objection to plaintiff's closing argument; and (4) the trial court erred in excluding from the jury evidence of plaintiff's recovery of workmen's compensation payments.
 I. PLAINTIFF'S APPEAL
The only issue raised by plaintiff is the entry of JNOV in favor of defendant on the ground that plaintiff was not a seaman and, therefore, was not entitled to recover. In federal courts, "[t]he standard for testing a jury's finding that a worker is or is not a Jones Act seaman is whether there is a reasonable evidentiary basis to support that finding." Savoiev. Otto Candies, Inc., 692 F.2d 363, 365 (5th Cir. 1982). In Alabama, a JNOV is improper if there was a scintilla of evidence to support the jury verdict. Rule 50 (e), A.R.Civ.P.;Hanson v. Couch, 360 So.2d 942, 944 (Ala. 1978). We need not decide whether the scintilla rule applies to a suit in state court in which federal law applies, since our review of the evidence convinces us that the result would be the same applying either standard.
The Jones Act does not define the term "seaman." A leading case on this *Page 533 
question is Offshore Co. v. Robison, 266 F.2d 769, 779-80 (5th Cir. 1959), in which the fifth circuit stated:
 "Attempts to fix unvarying meanings [which] have a firm legal significance to such terms as `seaman,' `vessel,' `member of a crew' must come to grief on the facts. These terms have such a wide range of meaning, under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts. The Jones Act cases involving coverage are similar in this respect to many negligence and contributory negligence cases."
The court set forth the following test:
 "[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips." 266 F.2d at 779.
In Robison, the plaintiff was assigned to a barge or mobile drilling platform. At the time of the accident, the barge was anchored to the bottom of the Gulf of Mexico. Plaintiff was a roughneck, or oil driller's helper. In addition to his oil drilling duties, plaintiff performed tasks on the barge such as chipping rust, painting, and washing down the decks. The court affirmed a judgment for plaintiff, holding that: (1) he was permanently assigned to a special purpose vessel; and (2) his duties aboard the vessel contributed to its mission, "to the operating function she was designed to perform as a sea-going drilling platform." 266 F.2d at 779.
Plaintiff claims that he meets the first part of the Robison
test because he was permanently assigned to a vessel, namely Barge No. 103. Defendant's first challenge to this is that the barge in question was not a vessel. Defendant relies upon three cases which hold that a workman who is assigned to or performs a substantial amount of work on a stationary platform moored in navigable waters is not a seaman. Cook v. Belden ConcreteProducts, Inc., 472 F.2d 999 (5th Cir.), cert. denied,414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973); Leonard v. ExxonCorp., 581 F.2d 522 (5th Cir. 1978), cert. denied,441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 397 (1979); Watkins v. Pentzien,Inc., 660 F.2d 604 (5th Cir. 1981), cert. denied, 456 U.S. 944,102 S.Ct. 2010, 72 L.Ed.2d 467 (1982). In Cook, the plaintiff was injured on a barge used as a floating construction platform. The platform was occasionally moved to different positions alongside the dock and was towed a short distance to deeper water to launch the barges constructed on the platform. The fifth circuit affirmed the trial court's grant of summary judgment for defendant. The appellate court held that the construction platform was indistinguishable from a floating dry dock and was, therefore, not a vessel. Responding to the plaintiff's argument that the platform was occasionally moved, the court stated:
 "The permanence of fixation, however, is not the criterion which governs the maritime status of floating dry docks and similar structures. As the Supreme Court pointed out in The Robert W. Parsons
the `determinative factors upon the question of jurisdiction [are] the purpose for which the craft was constructed and the business in which it is engaged.' 191 U.S. 17, 30, 24 S.Ct. 8, 12, 48 L.Ed. 73 (1903)." 472 F.2d at 1001. *Page 534 
Leonard involved a construction platform consisting of four flat deck barges, three of which were lashed together end to end and moored more or less permanently to the river bank by steel cables. The fourth barge, which carried a crane, was connected to the shore by a wooden ramp. It was moved slightly forward or backward to allow the crane to service the other three barges. Following Cook, the court affirmed the entry of summary judgment for the defendant on the grounds that the platform was not a vessel. However, the court noted that Cook
and Leonard should be applied restrictively since they deviate from the general practice of submitting Jones Act issues to the jury. 581 F.2d at 524.
In Watkins, the plaintiff was employed on two barges secured to each other by steel cables and used as a construction platform. The platform was placed at a right angle to the river, pushed close to the bank, and moored with spuds. The court found the two barges factually indistinguishable from the platform in Leonard.
The barge in the present case was not designed to be a stationary construction platform. It was used to transport a crane from one bridge footing to another to facilitate construction and repairs. The undisputed testimony at trial was that the barge was moved on the average of twice per week during the course of this particular project. In this respect, the barge is distinguishable from the platforms held not to be vessels in Cook, Leonard, and Watkins, and is similar to the barge in Brunet v. Boh Brothers Construction Co., 715 F.2d 196
(5th Cir. 1983). In Brunet, the plaintiff's accident occurred aboard a piledriving barge known as the Barge 4000 Ringer, which carried a crane used to drive pilings into marshland. At the time of the accident, the barge was moored by cables running from deck engines to pilings driven in the marsh. However, the barge had been moved by tugboat four times during the six months preceding the accident. The court distinguished the Cook line of cases as follows:
 "Central to the Cook line was the analogy of the barges to dry docks used for shipbuilding or to platforms used for pipeline construction. The Barge 4000 Ringer, however, lacks the Cook similarity to dry docks or construction platforms. The barge by necessity is designed to transport a piledriving crane across navigable waters to jobsites that cannot be reached by land-based pile-drivers. Only an expansive reading of Cook could cover this barge, yet Cook must be read narrowly. The district court erred in applying it here.
 "The district court found, and Boh Brothers now argues, that transportation of the pile-driving crane from one jobsite to another is `only incidental to the platform's pile-driving function.' While we agree that the barge was used more often to support the crane than to transport it, we cannot agree that the transportation function was so `incidental' as to warrant a conclusion that the barge was not a vessel as a matter of law." 715 F.2d at 198.
We conclude that the trial court could not find as a matter of law that the barge in the present case was not a vessel for purposes of the Jones Act.
Defendant also challenges plaintiff's assertion that he was permanently assigned to Barge No. 103. "[T]he word `permanent' has never been given a literal interpretation under the Jones Act." Davis v. Hill Engineering, Inc., 549 F.2d 314, 326-27
(5th Cir. 1977). In Ardoin v. J. Ray McDermott Co.,641 F.2d 277, 281 (5th Cir. 1981), the court stated:
 "The `permanency' requirement is, we think, best understood as indicating that in order to be deemed a `seaman' within the meaning of the Jones Act `a claimant [must] have more than a transitory connection' with a vessel or a specific group of vessels. Davis v. Hill Engineering, Inc., 549 F.2d 314, 326 (5th Cir. 1977)."
However, a claimant can be permanently assigned to a vessel without performing a substantial part of his work on the vessel. Davis, 549 F.2d at 326 n. 22. *Page 535 
There was evidence in this case that several barges were involved in the construction project. Each barge had a foreman and crew assigned to it. Plaintiff was taken to Barge No. 103 every day he worked on this project. All of the equipment needed for the job was on the barge. Plaintiff and the other crew members ate lunch on the barge and remained on it when it was moved from place to place. Although the majority of plaintiff's work was done in the cofferdam, he performed minor tasks on the barge, including some which aided in the navigation function of the vessel. There was sufficient evidence from which the jury could find that the plaintiff's connection with Barge No. 103 was not transitory, but rather that he was permanently assigned to the vessel.
Plaintiff maintains that he meets the second prong of theRobison test because his duties contributed to the accomplishment of the vessel's mission. It is clear that the mission of the barge was to aid in the construction of the bridge by transporting men and equipment. Plaintiff's duties as a concrete finisher could reasonably be found to contribute to that mission. See Ardoin, 641 F.2d at 282-83.
The issue of whether the plaintiff was a seaman was for the jury; it was error for the trial court to enter the JNOV.
 II. DEFENDANT'S CROSS-APPEAL A. Jury Charges
Defendant argues that the trial court erred in not giving the following requested charges:
"Defendant's Charge No. 6
 "I charge you, members of the jury, that an individual who is employed primarily in the construction of a bridge performing duties wholly unrelated to the navigation of a vessel is not a seaman. If you are reasonably satisfied from the evidence that the principal and primary employment of the plaintiff was as a laborer involved in bridge construction and that he was not primarily involved in the navigation of a vessel, then you may not return a verdict for the plaintiff.
"Defendant's Charge No. 7
 "I charge you, members of the jury, that the mere fact that the barge involved in this lawsuit is referred to as a `barge' and that it floats upon the water does not mean that it was a vessel in navigation. I further charge you that a craft which is secured to the dock or bank and engaged in the primary function as a stationary construction platform is not as a matter of law a vessel in navigation. Accordingly, I charge you that unless you are reasonably satisfied from the evidence that the barge was not merely a floating stationary construction platform secured to the cofferdam and/or the bank at the time of the plaintiff's accident, then you cannot return a verdict for the plaintiff.
"Defendant's Charge No. 8
 "I charge you, members of the jury, that a craft which is not at the time being used for the transportation of passengers, cargo, or equipment from place to place on the navigable waters and which was tied to a pier or pilings virtually all of the time and which was being used as a stable platform for working on a structure attached to the ground such as a pier or pile is not a vessel in navigation, and therefore individuals working on it are not seamen. If you are reasonably satisfied from the evidence that the barge involved in this lawsuit was a craft as described above, then you may not return a verdict for the plaintiff."
In addition, defendant requested the following charge, which was given by the trial court with the emphasized words deleted:
"Defendant's Charge No. 11
 "I charge you, members of the jury, that the owner of a vessel has the duty only to furnish a vessel and equipment reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a vessel that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suited for her *Page 536 
intended use and service. If the plaintiff has failed to prove that the barge on which he was working was a vessel in navigation at the time and place of the plaintiff's accident and that the barge was not reasonably fit for her intended use and service, then you cannot return a verdict for the plaintiff on the basis of unseaworthiness."
On the issue of whether plaintiff was a seaman, the trial court charged the jury with the requirements of the Robison
test. The trial court also informed the jury that plaintiff must have more than a transitory connection with the barge. Defendant's Charge No. 6 is not a correct statement of the law in the eleventh and fifth circuits. Plaintiff must be permanently assigned to a vessel and his duties must contribute to the mission of the vessel under Robison and its progeny; plaintiff's duties need not be related to the navigation of the vessel.
Defendant's Charges No. 7 and 8 and the deleted phrase in Charge No. 11 concern the question of whether the barge was a vessel. The trial court's charge stated:
 "And I charge you in that connection that in determining what is a vessel you may give consideration to the purpose for which the craft was constructed and the business in which it is engaged because strange looking, special purpose crafts such as barges, submersible drilling rigs, floating dredges, et cetera, far different from traditional seafaring ships are vessels within the meaning of the law."
Charges No. 7 and 8 are based on the Cook line of cases. However, the requested charges overly emphasize certain aspects of the case without fully explaining the law. For example, Charge No. 7 is misleading in that it refers to the barge being stationary and secured to the cofferdam at the time of plaintiff's accident. It is the purpose for which the barge was constructed and the business in which it was engaged that is determinative of its status as a vessel; the fact that the barge was moored at the time of the accident is irrelevant. Similarly, Charge No. 8 refers to a craft tied to a pier or piling "virtually all of the time." This ignores the undisputed evidence in this case that the barge was moved on the average of twice weekly. Furthermore, this instruction is not reconcilable with the case law holding that a barge moved four times in six months can qualify as a vessel, whereas a construction platform moved regularly may not be a vessel. SeeBrunet, 715 F.2d at 197-98; Cook, 472 F.2d at 1001-02. Finally, the phrase "in navigation at the time and place of the plaintiff's accident" in requested Charge No. 11 could mislead the jury into believing that the barge had to be moving at the time of the accident.
On appeal, the entire charge is reviewed to determine if there is reversible error. Wright v. Rowland, 406 So.2d 830,831 (Ala. 1981). Refusal of a written charge is proper when it is misleading or when it places undue emphasis on one phase of the evidence. Ott v. Smith, 413 So.2d 1129, 1134 (Ala. 1982);McCullough v. L N Railroad Co., 396 So.2d 683, 687 (Ala. 1981). It was not error for the trial court to refuse to give defendant's requested charges.
 B. Directed Verdict on Issue of Unseaworthiness
Plaintiff's theory of liability was that the ladder being used to go from the barge to the cofferdam was too short and could not be properly secured. Plaintiff testified that the ladder the crew had been using before the accident had been removed that morning by another foreman and replaced with the defective ladder. Defendant argues that the trial court should have directed a verdict in its favor on the unseaworthiness issue because the accident did not happen on the barge and the barge had nothing to do with the cause of the accident.
In Gutierrez v. Waterman Steamship Corp., 373 U.S. 206,83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), the Court held that a claim of unseaworthiness could be predicated *Page 537 
on faulty cargo containers which caused an injury ashore. The Court stated:
 "These cases all reveal a proper application of the seaworthiness doctrine, which is in essence that things about a ship, whether the hull, the decks, the machinery, the tools furnished, the stowage, or the cargo containers, must be reasonably fit for the purpose for which they are to be used. . . ." (Emphasis added.) 373 U.S. at 213, 83 S.Ct. at 1190.
In Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455,88 L.Ed. 561 (1944), a seaman was injured when he fell from a staging because of defective rope. The Court noted that the staging, which was an appurtenance to the vessel, was unseaworthy because it was inadequate for the purpose for which it was ordinarily used. The Court held that the presence of good rope on board which could have made the staging safe was irrelevant.
We conclude that the defendant was not entitled to a directed verdict on the unseaworthiness issue either because the accident occurred in the cofferdam or because the ladder which had been used earlier was safe.
 C. Closing Argument
During the closing argument by plaintiff's counsel on the issue of damages, the following argument, objections, and ruling occurred:
 "But here is one way I like to look at it: Let's picture a line of people, about a dozen people standing up in front of a table and a man is sitting there and he has got a blank check there, and he tells that line of people, `I'm ready to write you a check' — they are 31 or 32 years old, they are working men and women who have to use their bodies to get the job done, and he is telling them, `Here is what I'm going to do, you let me drop you in a twenty-one to twenty-two foot hole on a slab of concrete' —
 "MR. UZZELLE: Your Honor, I object. I think that's entirely improper type of argument and it is incorrect, and that's trying to get the jury — that's another way of arguing the Golden Rule argument which is not proper, trying to say what you would do, and I request that the Court instruct Mr. Cunningham not to continue with that type of argument.
"MR. CUNNINGHAM: I'm not talking about the jury —
"THE COURT: I overrule the objection."
Defendant argues that the ruling was error because it was an appeal to the jury's sympathy by inviting the jurors to stand in plaintiff's position.
A request that the jurors put themselves in the place of the plaintiff is an improper argument. Estis Trucking Co. v.Hammond, 387 So.2d 768, 773-74 (Ala. 1980). However, courts have not been overly restrictive in applying this rule.Fountain v. Phillips, 439 So.2d 59, 63 (Ala. 1983). "The reluctance of the courts to find prejudicial error in these situations finds its motivation in the countervailing rule `that great latitude should be given counsel in the content and scope of their closing arguments.'" 439 So.2d at 64 (quotingR.C. Bottling Co. v. Sorrells, 290 Ala. 187, 275 So.2d 131
(1973)). A bare invitation for the jurors to put themselves in the place of the plaintiff without an appeal to the jurors' passions and feelings has been held to be nonprejudicial.Hayles v. Jeter, 279 Ala. 283, 184 So.2d 363 (1966); BritishGeneral Ins. Co. v. Simpson Sales Co., 265 Ala. 683,93 So.2d 763 (1957).
In the present case, the argument does not directly invite the jurors to put themselves in plaintiff's position, but rather refers to some unspecified imaginary individuals.[2]
Defendant maintains that the "dozen people" is obviously the jury. However, the people are characterized as "31 or *Page 538 
32 years old, . . . working men and women who have to use their bodies to get the job done." We cannot assume that all of the jurors fit this description.
The argument is designed to make the jury realize that a reasonable person in plaintiff's position would not agree to being injured. We conclude that it was not reversible error because it does not invite the jurors to place themselves as individuals in plaintiff's position.
 D. Exclusion of Evidence of Plaintiff's Recovery of Workmen's Compensation Benefits
Defendant's final challenge to the proceedings below is that the trial court erred in keeping from the jury evidence of plaintiff's receipt of workmen's compensation benefits and his lawsuit in Baldwin County for additional workmen's compensation benefits. It is clear that this evidence was inadmissible for the purpose of showing that plaintiff should not be compensated under the Jones Act because of prior and future compensation under the Workmen's Compensation Act. Tipton v. Socony MobilOil Co., 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963). Defendant argues, however, that the evidence was admissible to show that plaintiff did not consider himself to be a seaman. We disagree.
Plaintiff's subjective belief that he is or is not a seaman has no place in the legal test for determining his status under the Jones Act. Robison and the other cases discussed in Part I,supra, do not consider plaintiff's opinion a relevant factor.
Defendant's reliance on Savoie v. Otto Candies, Inc.,692 F.2d 363 (5th Cir. 1982), is misplaced. In Savoie, the defendant had discharged the plaintiff from the vessel. However, defendant paid plaintiff seaman's maintenance after his injury. Plaintiff maintained that discharges were routinely given to seamen who were expected to return to the vessel in a few days. The central issue was whether plaintiff retained his status as a seaman after being discharged. In holding that admission of the evidence of maintenance payments was not prejudicial error, the court stated:
 "Contrary to Candies' assertions here and below, its payment of seaman's maintenance was not totally irrelevant. Candies had originally brought out that Savoie was `discharged' from the vessel . . . and this evidence tended to cast light on whether or not such `discharge' was intended to fully terminate Savoie as a Candies seaman, as opposed to being merely a routine formality when a seaman was temporarily rotated off the ship and expected to soon return to his duties there in accordance with normal practice. These payments tended to show that Candies regarded Savoie as being a seaman at the time of the accident, notwithstanding his prior `discharge.' This, in turn, was relevant to whether, when Savoie left the vessel and throughout his absence from it, there existed a mutual understanding and intention that his absence did not fully sever all aspects of his relationship to the Candies fleet and that, immediately following a brief period of recuperation, he would return to the actual performance of his duties as a deckhand upon the M/V ADELLE CANDIES. . . ." 692 F.2d at 367.
The court in Savoie held that admission of evidence of the payments was not reversible error; it did not hold that exclusion of the evidence would have been reversible error. Moreover, the evidence in that case was not admitted to show that plaintiff believed he was or was not a seaman, but was admitted to show what the defendant intended by the routine discharges. Thus, Savoie is distinguishable from the present case.
In holding that the trial court did not err in excluding evidence of the workmen's compensation payments and the pending lawsuit, we note that there is no dispute in this case that plaintiff will not receive a double recovery. It is clear that the trial court and the parties contemplated that the payer of the benefits would receive credit for the amounts already paid to plaintiff. *Page 539 
In conclusion, we find that the trial court erred in granting defendant's motion for JNOV. Moreover, we do not find any error requiring the grant of a new trial. Therefore, let the JNOV be reversed and the case remanded to the trial court for reinstatement of the verdict and entry of judgment thereon.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] The Jones Act, 46 U.S.C.A. § 688, provides in part: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply. . . ."
[2] See Osborne Truck Lines, Inc. v. Langston, 454 So.2d 1317,1322-23 (Ala. 1984), in which plaintiffs' counsel discussed an imaginary family at some length. Although we noted that some of the language "verg[ed] on an appeal to the sympathy of the jury," we did not decide the issue since the defendant had not made a proper objection to the argument.