Michael SANFORD,

v.

KOSTMAYER CONSTRUCTION COMPANY.

Civ. A. No. 93–1341.

United States District Court, E.D. Louisiana.

July 5, 1995.

Laurence Cohen, Morris Bart, P.L.C., New Orleans, LA, for plaintiff.

Elton Ford Duncan, III, Kaye N. Courington, Woodley, Williams, Fenet, Boudreau, Norman & Brown, New Orleans, LA, for Kostmayer Const. Co.

James C. Murphy, Jr., Cornelius, Sartin & Murphy, Elton Ford Duncan, III, Kaye N. Courington, Woodley, Williams, Fenet, Boudreau, Norman & Brown, New Orleans, LA, for Kostmayer and Associates.

Leon Anthony Crist, Metairie, LA, for Fidelity and Cas. Co. of New York.

## ORDER AND REASONS

JONES, District Judge.

Defendant Kostmayer Construction Company filed a "Motion for Judgment Notwithstanding the Verdict, or Alternatively for a New Trial and in the Further Alternative, for Remittitur," which was heard previously with oral argument. For the reasons stated in open court, which are supplemented herein, the Court GRANTS defendant's motion in part and DENIES defendant's motion in part. The Court reserves ruling on the issue of alleged juror misconduct and orders a hearing date for examination of the juror.

### Background

Plaintiff sued under the Jones Act and General Maritime Law claiming injuries he allegedly sustained while unloading equipment from defendant's barge, B–65. Plaintiff contended he was injured when he was caused to fall backwards while pulling on a line, causing him injuries. As a result, he underwent an anterior cervical fusion at C6–7.

At trial defendant contended that plaintiff was not a seaman, relying for the most part on the argument that the barge on which plaintiff was working was not a vessel in navigation. Defendant also denied liability and/or that plaintiff was injured on the job. Defendant further alleged contributory negligence.

After a two-day trial, a jury found in plaintiff's favor on the issues of injury-in-fact, whether barge B–65 was a vessel, and whether plaintiff was a seaman. The jury found defendant liable under the Jones Act but not under General Maritime Law. The jury also found that plaintiff was 15% contributorily negligent. (Attachment to R.Doc. 57.)

The jury awarded a total of $645,000 in damages, divided as follows: $250,000 for past, present and future physical pain and suffering; $20,000 for past medical expenses; $100,000 for past and future mental anguish and distress; $100,000 for past lost wages; $125,000 for impairment of future earning capacity; and $50,000 for future lost wages. *Id.*

The Court entered judgment in favor of plaintiff and against defendant for $534,501.29 with interest to run from date of judgment. (R.Doc. 58.)

Defendant contends that it is entitled to judgment as a matter of law on plaintiff's lack of seaman status because barge B–65 was not a vessel as a matter of law. Defendant seeks a new trial on three grounds. The first two—that the verdict is against the weight of evidence and that the Court failed to give the jury instructions based on defendant's requested instructions—track defendant's argument for judgment as a matter of law. The third basis for a new trial is alleged juror misconduct. Defendant contends that the jury foreman failed to inform the Court and the parties during voir dire of his participation in several lawsuits as both plaintiff and defendant.

Defendant also seeks remittitur, arguing that the jury award for pain and suffering is excessive and that plaintiff failed to prove

past medical expenses. Similarly, defendant contends that the jury award for past lost wages exceeded the opinion of either of the parties' experts at trial. Hence, defendant claims that remittitur is appropriate on these issues.

Finally, defendant argues that the Court erred in submitting separate interrogatories to the jury for future wage loss and impairment of future earning capacity. In relation to that issue, defendant contends that the evidence does not show that plaintiff was entitled to a damage award of $125,000 impairment of future earning capacity.

In opposition, plaintiff argues that under applicable law and the evidence adduced at trial, it was proper for the jury to determine whether barge B–65 was a vessel and whether plaintiff was a seaman. Further, the jury's conclusion is supported by the evidence. Plaintiff also contends that the damage awards by the jury, except for past lost wages, were proper. As to past lost wages, plaintiff agrees to a remittitur.

Plaintiff further argues that the record does not show that the jury foreman committed misconduct. Moreover, defendant cannot show prejudice necessary to grant a new trial on this issue.

## Law and Application

### I. Judgment as a Matter of Law

#### A. Procedural Analysis

█ Pursuant to Fed.R.Civ.P. 50, a party can move for a judgment as a matter of law. Rule 50(a)(1) provides, in pertinent part:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court ... may grant a motion for judgment as a matter of law with respect to a claim or defense that cannot under controlling law be maintained or defeated without a finding on that issue.

Rule 50(b) provides that "[w]henever a motion for judgment as a matter of law *made at the close of all the evidence is denied or for any reason is not granted,* the court is deemed to have submitted the action to the jury subject to a later determination of the

legal questions raised by the motion." (Emphasis added.) According to the Notes of the Advisory Committee for the 1991 Amendment to Rule 50, subsection (b) "retains the concept of the former rule that the post-verdict motion is a renewal of an earlier motion *made at the close of the evidence."* (Emphasis added.)

In the present case, the minutes for February 14, 1995, do not indicate that defendant made a motion for judgment as a matter of law at the close of all of the evidence. (R.Doc. 57.) Therefore, because defendant failed to make a motion for judgment as a matter of law at the close of all evidence, the Court is foreclosed from considering the present motion for judgment.

#### B. Substantive Analysis

█ Even had defendant made a timely motion for judgment as a matter of law, such a motion would have failed to bear fruit legally. As mentioned, defendant's principal argument is that plaintiff is not a seaman because the barge B–65 is not a vessel. In *McDermott International, Inc. v. Wilander,* 498 U.S. 337, 355, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991), the Supreme Court stated

> *The key to seaman status is employment-related connection to a vessel in navigation.* We are not called upon here to define this connection in all details, but we hold that a necessary element of the connection is that a seaman perform the work of a vessel. In this regard, we believe that the requirement that an employee's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission" captures well an important requirement of seaman status. It is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, but a seaman must be doing the ship's work. (Citations omitted.) (Emphasis added.)

After *Wilander,* the Supreme Court decided *Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991). The importance of *Gizoni,* for present purposes, is that plaintiff, who worked for the operator of a ship-repair facility, was

injured on a "platform" being used to transport a rudder from the shipyard to a floating drydock. *Id.* at 84, 112 S.Ct. at 490. As Justice White noted, "the platforms themselves have no power, means of steering, navigation lights, navigation aids, or living facilities." *Id.* at 83, 112 S.Ct. at 489. The platforms were used to move equipment, materials, supplies and vessel components. *Id.* at 83–84, 112 S.Ct. at 489. The plaintiff at times served as a "lookout" on the platform and gave maneuvering signals to the operator of the tugboat that moved the platforms. *Id.* at 84, 112 S.Ct. at 490. He also helped secure the platforms to the vessels under repair. *Id.*

The Supreme Court found that summary judgment was inappropriate as to whether the platforms at issue were vessels or not. *Id.* at 92, 112 S.Ct. at 494.

Defendant relies principally on factors set forth by the Fifth Circuit in *Bernard v. Binnings Construction Co., Inc.,* 741 F.2d 824, 831 (5th Cir.1984) in asking this Court to enter judgment as a matter of law in its favor on the basis that plaintiff was not a seaman because he was not assigned to a vessel or fleet of vessels.[1]

However, the Court finds that, even taking into account the *Bernard* factors, this case falls more in line with *Brunet v. Boh Brothers Construction Co.,* 715 F.2d 196 (5th Cir. 1983), a case that preceded *Bernard* but which continued to be recognized after *Bernard.*[2] In *Brunet,* the plaintiff's accident occurred on a pile-driving barge carrying a 150–ton crane that was used to drive pilings into marshland. *Brunet,* 715 F.2d at 197. The barge had been moved to the jobsite by tugboats and had been similarly moved four times during the six months preceding this accident. *Id.* The barge was moored at the time of the accident, was not self-propelled

(although it could move short distances by itself via a cable system) and had no crew quarters. *Id.* The court of appeals stated: "While we agree that the barge was used more often to support the crane than to transport it, we cannot agree that the transportation function was so 'incidental' as to warrant a conclusion that the barge was not a vessel as a matter of law." *Id.* at 198.

In the present case, as pointed out by plaintiff in his opposition memorandum, one of defendant's witnesses testified that the barge B–65 was used to transport equipment and supplies on the river and also to transport supplies for the men to do their work on this particular job.[3] Further, while the barge was moored and working, plaintiff performed various tasks relative to contributing to the mission of the vessel, *i.e.,* standing lookout, placing anchor lights, ballasting and pumping water from the bilges.[4] Viewing this evidence in light of *Gizoni* and *Brunet,* the Court finds that defendant is not entitled to a judgment as a matter of law that barge B–65 was not a vessel.

Instead, the issue was properly one for a jury's determination. As the Fifth Circuit stated in *Bernard,* "the question of seaman status should only be removed from the trier of fact (by summary judgment or directed verdict) in rare circumstances *and that even marginal Jones Act claims should be submitted to the jury.*" *Bernard,* 741 F.2d at 827 (emphasis added). The present case is such a marginal claim and not the type where the "only rational inference to be drawn from the evidence is that the worker is not a seaman." *Id.* at 828, quoting *Beard v. Shell Oil Co.,* 606 F.2d 515, 517 (5th Cir. 1979).

Defendant makes one other argument on this issue. Defendant relies on several cases

---

**1.** These factors are whether "(1) the structures involved were constructed and used primarily as work platforms; (2) [whether] they were moored or otherwise secured at the time of the accident; and (3) although they were capable of movement and sometime moved across navigable waters in the course of normal operations, [whether] any transportation function they performed was merely incidental to their primary purpose of serving as work platforms." *Bernard,* 741 F.2d at 831.

**2.** *See Ellender v. Kiva Construction & Engineering, Inc.,* 909 F.2d 803, 808 (5th Cir.1990) (factually distinguishing *Brunet* but recognizing the continuing applicability of its factors).

**3.** R.Doc. 60, pp. 5–7.

**4.** *Id.* at 6.

from outside the Fifth Circuit, principally *DiGiovanni v. Traylor Bros., Inc.*, 959 F.2d 1119 (1st Cir.1992) (*en banc*), for the prospect that workers assigned to a barge or other "float" whose primary purpose is not navigation or commerce are only seaman "when [the barge] is in actual navigation or transit." *Id.* at 1123. *DiGiovanni* relies on *Bernard* for this proposition. *DiGiovanni*, 959 F.2d at 1123.

The Court first notes that *DiGiovanni* has not been adopted as law in this circuit. Moreover, defendant's narrow view of *DiGiovanni* is inapplicable to the present factual situation. *DiGiovanni* acknowledges that *Bernard* states that a platform is a vessel if it was "used primarily for the transportation of cargo, equipment or persons across navigable waters." *Id.*, quoting *Bernard*, 741 F.2d at 829. The testimony referenced above by plaintiff in his opposition memorandum shows that the barge was used to carry equipment to the work site on the Mississippi River and was used to transport supplies, equipment and men to do their job at the site. Thus, even under *Bernard*, as quoted by *DiGiovanni*, the Court finds that judgment as a matter of law is inappropriate.

Therefore, for the foregoing reasons, defendant's motion for judgment as a matter of law should be denied.

## II. Motion for New Trial

■ On a motion for new trial, the "trial judge may set aside a verdict and grant a new trial, if in his opinion, 'the verdict is against the clear weight of the evidence * * * or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *United States v. Bucon Construction Company, Inc.*, 430 F.2d 420, 423 (5th Cir.1970), *quoting Aetna Casualty & Surety Co. v. Yeatts*, 122 F.2d 350, 352 (4th Cir.1941).

### A. Failure to Give Requested Jury Instructions and Interrogatories and Verdict Against the Great Weight of Evidence

■ Defendant argues that it is entitled to a new trial because the Court failed to give its requested jury instructions and interrogatories and because the evidence clearly shows it is entitled to a new trial. Defendant relies on the same law for these contentions as in its motion for judgment as a matter of law.

Prior to the decision in *Gizoni*, it may have been proper to instruct the jury as to the *Bernard* factors to aid the jury in its determination as to whether certain floating work platforms, such as the barge in this case, were vessels. Since *Gizoni*, however, the inclusion of these factors in jury instructions has not been followed. *See, e.g., Pattern Jury Instructions*, U.S. Fifth Circuit District Judges Association (1994) and (1995), p. 37.

Therefore, the Court finds that this aspect of the motion for new trial should be denied.

Further, because defendant relies on the same legal argument for its contention that the verdict was against the great weight of the evidence as it does in its request for judgment as a matter of law, and because the Court has rejected those arguments, the Court similarly rejects this aspect of defendant's motion for new trial.

### B. Juror Misconduct

■ Defendant also seeks a motion for new trial due to alleged juror misconduct. Alternatively, defendant seeks an evidentiary hearing on this issue. Defendant alleges that the jury foreperson, Ronald LeBlanc, was not forthright with the Court during voir dire because he failed to inform the Court that he had been involved in three lawsuits arising out of automobile accidents (twice as a plaintiff and once as a defendant) in addition to the automobile accident about which he informed the Court. Defendant attaches copies of these other lawsuits in which the juror foremen allegedly was involved to its supplemental memorandum in support of its motion. (R.Doc. 61.)

In *Vezina v. Theriot Marine Service, Inc.*, 554 F.2d 654 (5th Cir.1977), a personal injury plaintiff who received an adverse jury verdict claimed that he was prejudiced by the presence on the jury of the foreperson who allegedly told others, but not the Court during voir dire, that she had a $500,000 lawsuit pending against her and that personal injury

suits were "good for nothing." *Id.* at 655. There was no dispute that the lawsuit was pending against the juror, and the record also showed that she informed the trial court of this lawsuit during later voir dire for the selection of a another jury for another trial on the same day. *Id.* at 655–56. However, plaintiff's counsel was apparently not present during the selection of this second jury, though defense counsel was. *Id.* at 656, n. 2.

The Fifth Circuit stated:

If a verdict is the result of prejudice, or for any other reason it appears that the jury abused its discretion on the issue of liability, the trial court must order a new trial. However, there is no proof in the record that the remarks attributed to [the jury foreperson] were actually made or that the other jurors were prejudiced by them since no evidentiary hearing on the subject was held.

\* \* \* \* \* \*

In this Circuit there is no hard and fast rule requiring a new trial for failure of a juror at voir dire examination to disclose in a personal injury case the fact that he was a party to a similar case. In the absence of a showing of prejudice to a litigant the mere failure of a juror to make such a disclosure is not ground for a new trial. The determination of whether a new trial should be granted because of a juror misconduct is left to the sound discretion of the trial court and must be decided on an *ad hoc* basis.

*Id.* (Citations omitted.)

With this holding, the Court then found that an evidentiary hearing was necessary and remanded the case. *Id.*

In this case, while it does not seem that Mr. LeBlanc was untruthful, as defendant alleges, there is a question, however slight, as to whether he responded completely to the question asked of the entire venire panel if he had ever been involved in any other lawsuits. It is undisputed, however, that he disclosed his most recent automobile accident for which he underwent a surgical procedure similar to that plaintiff underwent and that, after this disclosure, he stated he could be fair to both parties. (Voir Dire, Exh. 1,

attached to Plaintiff's supplemental opposition memorandum, R.Doc. 63.)

The record also indicates that defendant had one peremptory challenge remaining at the time the jury foreperson was allowed to stay on the jury. The obvious questions are whether the defendant would have exercised that challenge if it knew about these other lawsuits and, more importantly, whether defendant was prejudiced by the absence of this knowledge.

The Court has reviewed the record and does not believe that defendant has been prejudiced by the jury foreperson's answers, or lack thereof, especially in view of the fact that the jury foreperson disclosed that he had suffered a neck injury similar to plaintiff's which also required surgery.

However, the Court reluctantly orders an evidentiary hearing on this issue so that counsel may question the jury foreperson as to these former lawsuits, what happened to them, and why he did not disclose them. This is in accord with *Vezina, supra.* At the same time, unless the defendant is able to show that it was prejudiced in some manner, the Court will deny the motion for new trial as to this issue following the evidentiary hearing.

■ Defendant also alleges misconduct because the jury foreperson denied working for any specific firm during voir dire. Defendant bases this contention on the allegation in one of the lawsuits in which the jury foreperson was sued to the effect that he was in the course and scope of employment of a prominent plaintiff's attorney at the time of the accident. The Court dismisses this issue and finds that the record clearly shows that the jury foreperson stated during voir dire that he worked for several entities, both plaintiff- and defense-oriented. (Voir Dire, Exh. 1, attached to plaintiff's supplemental opposition memorandum, R.Doc. 63.) Allegations in a lawsuit are just that, and the allegation relied on by defendant hardly shows that the jury foreperson was less than truthful with the Court during voir dire.

Thus, the evidentiary hearing will be strictly limited to examination of the jury

foreperson with respect to other lawsuits that he may have been involved in.

## III. Remittitur

▮ It is well settled that remittitur is permissible, *i.e.*, a court may condition denial of a new trial upon the plaintiff's acceptance of a remittitur in a stated amount. *See Seidman v. American Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir.1991). Wright & Miller, *Federal Practice & Procedure: Civil* § 2815 at 100, 103. However, "[w]hen a new trial is requested because the amount of the verdict is excessive or inadequate, the motion should not be granted unless the verdict is against the great weight, not merely the preponderance, of the evidence." *Seidman*, 923 F.2d at 1140.

Defendant seeks a new trial or remittitur on a number of items of damages, which the Court addresses in turn.

### A. Pain and Suffering

▮ The jury in the present case awarded plaintiff $250,000.00 for past, present and future physical pain and suffering and $100,000 for past, present and future mental pain and suffering. The evidence showed that plaintiff underwent an anterior cervical fusion, and reached maximum medical care approximately 10 months after his surgery. (Transcript of videotape deposition testimony of plaintiff's physician introduced at trial, p. 23., attached as Exh. D to defendant's memorandum in support, R.Doc. 59.) His physician assigned him a 15–20% anatomical disability to his body as a whole. *Id.* at 21, 36.

In *Williams v. Chevron*, 875 F.2d 501 (5th Cir.1989), the court followed the rule that a jury's award was not to be disturbed "unless it is entirely disproportionate to the injury sustained." *Id.* at 506. The plaintiff had undergone an anterior cervical fusion. *Id.* at 503. The jury had awarded a total of $400,000 for both physical and mental pain and suffering. *Id.* at 506. The Fifth Circuit found that whether a recovery is excessive cannot be determined solely by comparison to other awards upheld or reversed in other cases; however, other awards can be examined for "rough guidance in assessing the award at hand." *Id.* The court reviewed a number of cases, including many cited by the parties herein in their memoranda, and concluded that the $400,000 award was excessive. *Id.* at 507. The court found that the maximum award for both physical and mental pain and suffering was $200,000. *Id.*

The *Williams* court relied heavily on *Holmes v. J. Ray McDermott & Co., Inc.*, 734 F.2d 1110 (5th Cir.1984), where the plaintiff suffered from a herniated lumbar disc, had a 10 to 15% permanent disability and suffered ongoing depression, and where the Court found that an approximate $180,000 award for pain and suffering was not "shocking." *Id.* at 1119. *See also Ellis v. Dover Elevator Company*, 597 So.2d 1 (La.App. 4th Cir.1992) (amending lump sum award of $350,000 for herniated cervical disc with anterior cervical fusion and 10–15% permanent partial disability, including award for past and future lost wages, to $200,000 as "highest amount" reasonably within the trial court's discretion).

Here, defendant seeks remittitur to less than $200,000 in light of plaintiff's good result from his surgery and his return to hunting and other activities.

The Court is persuaded that the jury award was proper for two reasons. First, as to the award for physical pain and suffering, the Court notes that plaintiff's anatomical disability rating of 15 to 20% as a whole is higher than that of the plaintiffs in the *Williams, Holmes* or *Ellis* cases. Thus, the jury's award of $250,000 for physical pain and suffering was not "shocking" or "entirely disproportionate" to the injury plaintiff sustained. *Williams, supra.*

The second reason relates to the award for mental pain and suffering. The Court believes that this award is proper based on the evidence presented at trial and alluded to by plaintiff's counsel at oral argument to the effect that plaintiff always wanted to work for defendant because his family members had worked for defendant and that plaintiff is now relegated to the job of a snack delivery man. In view of this evidence, the Court finds that the jury award of $100,000 for mental pain and suffering is not "entirely disproportionate." *Williams, supra.*

The Court rules on this issue knowledgeable that the Fifth Circuit has instructed that

other cases can only be used for "rough guidance" in assessing the propriety of a damage award. Further, the Court finds that new trials should only be granted when awards are against the "great weight" of the evidence. Because these awards are not against the "great weight" of evidence, both remittitur and a new trial are inappropriate.

### B. Past Medical Expense

 Defendant claims that plaintiff failed to prove his past medical expenses in the amount of $20,000. Plaintiff relies on the stipulation entered into with the intervenor as to the amount of past lost expenses. (Attachment to R.Doc. 57.) Further, during closing argument, the plaintiff sought a larger jury award than the $20,000.00. Based upon this record, the Court finds that the award for past medical expenses should not be disturbed, especially in view of the fact that it was less than plaintiff even requested. Further, such an award does not represent double recovery to plaintiff because the intervenor is due the amount it paid for plaintiff's medical expenses from the judgment in favor of plaintiff.

### C. Past Wage Loss

 Plaintiff concedes that his past wage loss can be no more than what his own expert testified to, $46,648, and that remittitur is proper on this issue. Additionally, the Court finds this amount proper under the rule of maximum recovery, i.e., there is no evidentiary support in the record for any amount above the figure supplied by plaintiff's own economist. *Treadaway v. Societe Anonyme Louis–Dreyfus*, 894 F.2d 161, 169 (5th Cir.1990).

### D. Impairment of Future Earning Capacity and Future Wage Loss

The jury awarded $125,000 for impairment of future earning capacity and $50,000 for loss of future earnings, for a total of $175,-000.

 Defendant argues that because courts use the terms "future wage loss" and "impairment of future earning capacity" interchangeably, *see, e.g., Michel v. Total Transportation, Inc.*, 957 F.2d 186, 192 (5th Cir.1992), the Court erred in separating

these elements on the verdict form. Defendant also contends that the evidence does not support an award for $125,000 in impairment of future earning capacity.

The Court does not have to reach the issue of error in separating the damage elements because, as plaintiff points out in his opposition memorandum, the $175,000 total award is below the alleged loss of $241,311 of future income/earning capacity as opined by plaintiff's expert. (R.Doc. 62, pp. 11–12) Such an award is within the Fifth Circuit's maximum recovery rule. *See Treadaway, supra.*

 Defendant's argument that plaintiff is not entitled to $125,000 for impairment of future earnings capacity also fails as it is based on the contention that its own expert testimony is more credible than that of plaintiff. However, the jury was entitled to accept or reject either side's experts and, obviously, favored plaintiff's experts' testimony.

 The Court also does not find that the testimony of each party's rehabilitation expert was so inconsistent as to require remittitur. Plaintiff's rehabilitation expert testified that the parameter of jobs that plaintiff could perform would widen if plaintiff could do light to medium work, and defendant's expert testified that there are a number of driving jobs that plaintiff could perform as "light" work. (Defendant's memorandum in support, R.Doc. 59, pp. 31–32.) This testimony does not conflict.

Therefore, the Court denies defendant's request for remittitur on the issue of future lost wages/impairment of future earning capacity.

### IV. Conclusion

Defendant's motion for judgment as a matter of law is denied. Under Fifth Circuit law, determination of whether barge B–65 was a vessel was properly a jury question. Additionally, defendant's motion for new trial based on the issues of failure to give requested jury instructions and/or jury interrogatories and of the verdict being against the weight of the evidence are denied under applicable Fifth Circuit law.

The Court reserves ruling on the issue of juror misconduct pending an evidentiary hearing for the Court to determine whether defendant suffered any prejudice.

As to the issues of remittitur, plaintiff has agreed to remittitur on the issue of past medical expenses. The judgment will be so amended following the evidentiary hearing on juror misconduct, assuming the Court finds no prejudice to defendant. In all other respects, defendant's requests for remittitur are denied.

Accordingly,

IT IS ORDERED that defendant's "Motion for Judgment Notwithstanding the Verdict and in the Alternative for New Trial and in the Further Alternative, for Remittitur" is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the Court reserves ruling on the issue of juror misconduct pending an evidentiary hearing on August 23, 1995, at 8:30 a.m.

IT IS FURTHER ORDERED that defendant is to subpoena the jury foreperson for this hearing.