Ken WILSON, Appellant,

v.

Anthony DONZE and Lena
Donze, Appellees.

No. 2–84–243–CV.

Court of Appeals of Texas,
Fort Worth.

June 26, 1985.

Bagby, Ross, Arnn & Hartley and Deborah K. Hartley, Arlington, for appellant.

Jones Parks & Huffman and B. Scott Huffman and Daniel E. Blumberg, Arlington, for appellees.

Before JORDAN, ASHWORTH and HOPKINS, JJ.

## OPINION

HOPKINS, Justice.

Ken Wilson appeals from a judgment rendered on a jury verdict awarding Anthony and Lena Donze $24,900 actual damages and $35,000 exemplary damages for breach of Wilson's fiduciary duty as a real estate broker for the Donzes.

Wilson, trustee, purchased the Donzes' 12.139 acre tract of land near Mansfield, Tarrant County, Texas, on the same day he sold the property to a couple named Bullard. Wilson reaped a profit of $29,278.59, which he divided evenly with T.A. Cotton Powers, another licensed real estate broker who represented the Bullards. Originally, the suit included the Bullards as plaintiffs and Powers as a defendant. However, prior to concluding the presentation of evidence, the Bullards and Powers settled their part of the lawsuit and the case proceeded with the Donzes as plaintiffs and Wilson as defendant.

We affirm.

Appellant alleges ten points of error, six of which assert "no evidence" or "factually insufficient evidence". Additional points claim improper submission of certain special issues as (1) being beyond the scope of the pleadings; (2) that no duty was owed by Wilson to obtain the best possible price for the Donzes; (3) that a breach of a fiduciary duty, even if willful and malicious, will not support an award of exemplary damages; and (4) that $35,000 exemplary damages is manifestly excessive.

By their answers to a portion of the special issues, the jury found that (1) Wilson acted as the Donzes' real estate broker in the sale of their property; (2) Wilson failed to obtain for the Donzes the best possible price; (3) the best possible price was $115,000; (4) the failure was willful and malicious; (5) Wilson failed to disclose to the Donzes that Wilson would receive a profit from the sale in excess of an ordinary real estate commission; and (6) such failure was willful and malicious.

In points of error one and two, Wilson says there was no evidence or factually insufficient evidence that he was the real estate broker for the Donzes. In points five and six, Wilson states there was no evidence and factually insufficient evidence that he failed to obtain for the Donzes the best possible price for their land. In points eight and nine, Wilson claims there was no evidence or factually insufficient evidence that his failure to obtain the best possible price and failure to reveal his profit on the transaction was willful and malicious.

 In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See*

*International Armament Corporation v. King*, 28 Tex.Sup.Ct.J. 255 (February 20, 1985); *Stodghill v. Texas Employers Insurance Association*, 582 S.W.2d 102, 103 (Tex.1979); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate*, 244 S.W.2d at 661–62.

■ A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; (4) the evidence establishes conclusively the opposite of a vital fact. *Royal Indemnity Co. v. Little Joe's Catfish Inn, Inc.*, 636 S.W.2d 530, 531 (Tex.App.—San Antonio 1982, no writ); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960).

■ If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for the appellant unless the interests of justice require another trial. *See National Life & Accident Ins. Co. v. Blagg*, 438 S.W.2d 905, 909 (Tex.1969); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

■ Where the challenge to a jury finding is framed as an "insufficient evidence" point, we are to consider all the evidence in the case, both that in support of and that contrary to the finding, to determine if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *See Garza v. Alviar*, 395 S.W.2d at 823. If the court so determines, the finding should be set aside and a new trial ordered. *Id.*

■ In considering an "insufficient evidence" point, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. *See Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). This court may not substitute its judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *See Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

A review of the record reveals evidence that in May, 1982, Wilson telephoned and asked the Donzes if their property was for sale. He was informed that it was and that the sale price was $85,000. Wilson told the Donzes he had a couple that had been looking for a place for several months and that he would like to show the property to them. Wilson was asked if he was a real estate broker, and, upon replying in the affirmative, he was advised by the Donzes they did not do business with brokers, they sold their own land and did not pay commissions. Wilson said if he could just sell their property, he would obtain his fee from the buyer. The Donzes agreed that Wilson could view the property and later told him he could show it to the couple. The Donzes explained that they wanted the purchaser to be someone who would not develop the property but would live there and enjoy it as Mrs. Donze's family had for the past 80 years. Wilson explained the couple had been living in South America and had been looking for a place upon which to retire. About ten days later, Wilson again called and told the Donzes the couple wanted the property and he would have the papers prepared immediately. The Donzes expressed a preference for a particular title company they had done business with previously, but Wilson said the couple was returning to South America and he needed to sew up the deal in a hurry and his attorney would have to prepare the papers.

During all the negotiations, Wilson never said anything to the Donzes about wanting to buy the property himself nor did he ever disclose to them the profit he anticipated making on the transaction; instead Wilson indicated to the Donzes that the couple was buying the property. The sales contract Wilson presented for the Donzes' signatures on June 2, 1982, named Ken/Car Investments, Inc., trustee or assigns, as purchaser of the Donzes' property for $85,-000 and provided for an earnest money escrow deposit of $1,000. Ken/Car Investments, Inc. was a business owned by Wilson and his wife. The $1,000 escrow payment was made by Powers.

There was evidence that Cotton Powers had been attempting to locate a small acreage tract for a couple named Bullard but had been unsuccessful in that regard. Powers mentioned to the Bullards that Wilson had a listing of property in which the Bullards might be interested. Wilson contacted the Bullards several times about various tracts but the Bullards showed no interest in buying until Wilson showed them the Donzes' tract. Wilson related to the Bullards the history of the Donze property and the fact the Donzes wanted to sell to someone who would not develop the tract, but who would live there and enjoy the farm. Although the Donzes had set a price of $85,000, Wilson advised the Bullards that the Donzes wanted $10,000 per acre for the land. He also mentioned he would like to buy the property but because of his financial reverses he could not do so. He also told the Bullards he had 30 days to sell the property and that another couple was interested in buying it.

On June 1, 1982, Powers secured from the Bullards an offer to purchase the property for $100,000. At the time, Powers told them he did not believe their offer would be accepted and that he thought it would take $115,000 to close the deal.

The Bullards indicated that if it took $115,000, they would pay it. Pursuant to Powers' suggestion, the Bullards gave him their check for $10,000 as an earnest money deposit. On June 2nd, the same day Wilson entered into a contract as Ken/Car Investments, Inc., trustee or assigns, to purchase the Donzes' property for $85,000, Powers called the Bullards and told them their $100,000 had been rejected and that it would take $115,000 to buy the property. The Bullards agreed and a completed contract naming Ken Wilson, trustee, as seller was delivered to the Bullards later that same day.

About ten days after the two contracts were signed, the Donzes called Wilson and told him they had been advised not to sell the property for less than $10,000 per acre. Wilson replied that property was not selling like that and that it was not worth that price. After the two sales contracts had been executed, the Donzes and the Bullards met one time and discussed the fact that the Bullards were buying the property but did not discuss the price being paid. Apparently, each couple thought the sale and purchase was between them and without the intervention of a middle man. Though Wilson had assured the Donzes the Bullards would be present for the closing, Wilson arranged for the Bullards to close at 11:30 a.m. June 11th and the Donzes at 1:30 p.m. the same day. The deed from the Donzes was to Ken Wilson, trustee, and the deed to the Bullards was from Ken Wilson, trustee. It is undisputed that the money Wilson received from the Bullards was used to purchase the property from the Donzes. When asked at trial for an explanation as to why he purchased and sold as trustee, if he was doing business for himself, Wilson said he had no logical explanation. Mrs. Donze testified she would never have sold the property if she had known Wilson was making a "secret profit" in the transaction.

Several days after the closings, the Bullards received a corrective deed reserving one-half the minerals in favor of Wilson and Powers. Mrs. Bullard called Mrs. Donze for an explanation and it was then Mrs. Donze learned for the first time that the Bullards had paid $115,000 for the property.

■ We hold that the evidence was sufficient to establish that Wilson was acting as broker for the Donzes, that he failed to obtain the best possible price for them, and that his actions were willful and malicious. Appellant's points of error one, two, five, six, eight and nine are overruled.

■ In point of error three, Wilson asserts the trial court erred in submitting the special issues inquiring of Wilson's duty to obtain for the Donzes the best possible price for their property because the issues were not supported by the pleadings, and, by point of error four, he claims the issues should not have been submitted because he had no duty to the Donzes to obtain the best possible price. We disagree.

The record reflects that the trial court granted the Donzes leave to file a trial amendment raising the issues prior to the charge being filed. Therefore, appellant's point of error three is overruled.

■ As to point four, Wilson contends that since the Donzes received the price they asked for the property and are happy with the Bullards as eventual owners of the property, they have no right to complain. We disagree. As real estate broker for the Donzes, Wilson had the obligation to obtain for them the best price possible, even if the Donzes had set a lesser price. *Burleson v. Earnest,* 153 S.W.2d 869, 874 (Tex.Civ.App.—Amarillo 1941, writ ref'd w.o.m.). This court held in *Riley v. Powell,* 665 S.W.2d 578, 580 (Tex.App.— Fort Worth 1984, writ ref'd n.r.e.) that when a real estate broker is retained to sell another's property, he becomes obligated to procure the best price available for the seller. Wilson would distinguish the present case on the basis that the Donzes refused to pay him a commission, therefore, he was not retained. We disagree. A real estate broker is a person who, for another person and for a fee, commission, or other valuable consideration, *or with the intention or in the expectation or on the promise of receiving or collecting a fee, commission, or other valuable consideration from another person, procures or assists in the procuring of prospects for*

*the purpose of effecting the sale, exchange, lease or rental of real estate.* See TEX.REV.CIV.STAT.ANN. art. 6573a, sec. 2(2)(I) (Vernon Supp.1985) (Real Estate License Act). Though Wilson denies he was acting as a real estate broker for the Donzes, the evidence is clear that he represented to the Donzes he had a couple in mind that would fill the Donzes' requirement as a purchaser who would live on the property. Wilson knew that he did not meet those requirements. He also represented to the Bullards that he could not afford to buy the property and that the Bullards would be purchasing the property from the Donzes. Mrs. Donze testified that after she told Wilson she would not do business with him, he "bargained" with her that if she would let him sell the land, he would receive his fee from the buyers to which she agreed. This testimony is fortified by Wilson's statement when questioned at trial by his own attorney:

Q. At any time during this first conversation did Mrs. Donze tell you—just a second, Judge. Did Mrs. Donze tell you that she would *allow you to sell* her property if you could collect a commission from the buyer that she would net $85,000?

A. *Yes, she did.* That's the only way she would sell it. [Emphasis added.]

■ We hold that in order to establish an owner/broker relationship, it is not a prerequisite that the owner contract to pay the broker a commission or fee. As the broker for the Donzes, Wilson had a duty to make a full disclosure that he was purchasing the land for his own anticipated profit. *Anderson v. Griffith,* 501 S.W.2d 695 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.). Furthermore, it is not necessary that all of the elements of agency for hire be present in order for a fiduciary relationship to exist. *Schiller v. Elick,* 240 S.W.2d 997, 1000 (Tex.1951). Appellant's point of error four is overruled.

■ Appellant's point of error seven asserts that a real estate broker's breach of his duties as an agent of his principal is

a breach of contract and as such no exemplary damages are recoverable, even if the breach is accompanied by willful and malicious conduct. We disagree. Although ordinarily a breach of contract does not authorize a recovery of exemplary damages, *Van Sickle v. Clark*, 510 S.W.2d 664 (Tex. Civ.App.—Fort Worth 1974, no writ), a tort may grow out of, be made a part of, or be coincidental with a breach of contract thereby permitting the recovery of exemplary damages if committed willfully and maliciously. *McDonough v. Zamora*, 338 S.W.2d 507, 514 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.). We hold that Wilson's willful and malicious breach of his fiduciary duty to the Donzes in failing to obtain the best possible price for them and in failing to disclose the profit he was making in the transaction was of such a tortious nature as to permit the recovery of exemplary damages. Appellant's point of error seven is overruled.

In point of error ten, appellant complains that the award of $35,000 exemplary damages is manifestly too large. Wilson cites no authority for his assertion but seems to rationalize that since he split his profit with Powers, and, as a real estate broker, he would have been entitled to an ordinary real estate commission based on his sale price to the Bullards of $115,000, the award was excessive. We disagree.

The amount of exemplary damages rests largely in the discretion of the jury. *Southwestern Investment Company v. Neeley*, 452 S.W.2d 705, 708 (Tex. 1970). Unless the amount is so large as to indicate that it is the result of passion, prejudice or conception, or that the evidence has been disregarded, the jury verdict is conclusive and will not be set aside as excessive on appeal. *Skillern & Sons, Inc. v. Stewart*, 379 S.W.2d 687, 692 (Tex. Civ.App.—Fort Worth 1964, writ ref'd n.r. e.). The jury had the opportunity of considering all the facts and circumstances surrounding the transaction and to observe the attitude and demeanor of the witnesses in arriving at an amount they believe proper to deter Wilson, and others in like fiduci-

ary relationships, from engaging in similar conduct. We find no indication in the record that the jury award resulted from anything other than a full and fair consideration of the evidence. We find the amount of exemplary damages is in reasonable relationship to the award of actual damages. Appellant's point of error ten is overruled.

Affirmed.