854 F.2d 110
 Blue Sky L. Rep. P 72,781, Fed. Sec. L. Rep. P 94,006
Don L. SPARKS and Discovery Operating, Inc., Plaintiffs-Appellees,
v.
R.P. BAXTER, Sr., Brady R. Baxter, and Colleen S. Baxter,
Defendants-Appellants.
 No. 87-1244.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 7, 1988.
 
 Joe Bailey Hyden, Guittard, Hyden & Guittard, Robert P. Baxter, Jr., Kenneth L. King, Bruce W. Claycombe, Dallas, Tex., for defendants-appellants.
 Deborah H. Loomis, Asst. Atty. Gen., Chief, Finance Div., Austin, Tex., James V. Hammett, Jr., Deborah Essig Taylor, Butler & Binion, Houston, Tex., for amicus State of Tex.
 W.B. Browder, Jr., Midland, Tex., for amicus Independent Petroleum Assn. of America.
 A. Scott Anderson, Austin, Tex., for amicus Texas Independent Producers, et al.
 Appeals from the United States District Court for the Western District of Texas.
 Before POLITZ and JOHNSON, Circuit Judges, and BOYLE, District Judge:*
 POLITZ, Circuit Judge:
 
 
 1
 R.P. Baxter, Sr., Brady R. Baxter, and Colleen S. Baxter appeal a judgment on jury verdict, and an order awarding expenses, contending that the evidence does not support the verdict; they were not joint venturers with appellees Don L. Sparks and Discovery Operating, Inc.; appellees violated both federal and Texas securities laws; Colleen S. Baxter should not have been cast for the full amount of the award; and the expenses awarded are not recoverable costs. Finding substantial evidence in support of the verdict, and no error of law, but modifying the judgment as to Colleen S. Baxter, and to delete the award of expenses, we affirm the judgment on verdict and order as modified.
 
 Background
 
 2
 Sparks and Ernest Angelo formed Discovery Operating, Inc. to engage in oil and gas operations. In 1974, Sparks and Angelo acquired four leases in Reagan County, Texas which they later transferred to Chaparral, now Love Oil Company, with each retaining a 12 1/2% working interest after payout. As part of the agreement, Discovery was to be operator of the properties, and Sparks and Angelo were granted a preferential right of purchase in the event Love decided to sell its interest. In December 1983 Love informed Sparks that it wished to sell the Reagan County properties and was seeking bids. By letters dated January 27, 1984 Love advised Sparks and Angelo that it had an acceptable offer of $3.45 million from Ensource, Inc. Sparks and Angelo were given ten days to exercise their preference. After securing the advice of a petroleum engineer on the potential of the leases, Sparks notified Love of the exercise of the preferential option.
 
 
 3
 When Sparks received Love's notice, Brady Baxter was a landman working out of rent-free office space in Sparks' building. Sparks informed Brady Baxter about the Reagan County matter and of his interest in finding investors. Brady Baxter indicated that he and his father, R.P. Baxter, might be interested, and Sparks furnished some data about the leases. After R.P. Baxter visited Midland and examined more data, the Baxters agreed to join Sparks in the purchase of Love's interest in the properties. On February 15, 1984, Sparks and Brady Baxter, individually and as authorized agent for his father, jointly executed a note for $3.45 million to First City National Bank of Midland for the short-term financing of the purchase of Love's interest. Permanent financing was to be arranged after portions of the interest were sold to other participants.
 
 
 4
 On February 16, 1984, Sparks and the Baxters met in Denver to conclude the transaction with Love. Consistent with the terms of the preferential option, the assignment was made to Sparks, who held equitable title to one-half in favor of the Baxters. Following this transaction, Sparks and the Baxters arranged to acquire Angelo's interest. Pursuant to a note signed by the Baxters and Sparks, First City National Bank furnished $675,000 for that purpose.
 
 
 5
 Possessed of the entire interest in the Reagan County leases, Sparks and the Baxters began to solicit investors. R.P. Baxter and David Nicolay arranged for Sparks to make a presentation to potential investors in Phoenix. Thereafter R.P. Baxter directed Sparks to individuals in Illinois and Hawaii. Almost all interests were sold at a higher unit cost than the cost of acquisition. After all assignments to investors, Sparks retained a 23.9% working interest and the Baxters retained a 28.8% interest. For his sales efforts Sparks received cash commissions totaling $135,768 and a carried working interest of 5.7%. The Baxters received cash commissions of $100,768 and a carried interest of 1.03844% for their efforts.
 
 
 6
 The investors entered into operating agreements with Discovery which, by this time, was owned entirely by Sparks. The agreements required prepayment of expenses. Only Sparks and the Baxters had the privilege of paying after the costs were incurred by Discovery.
 
 
 7
 The success with finding investors for the Reagan County leases fueled a desire by Sparks and the Baxters to find similar opportunities where assignments to investors would cover or reduce their cost of participation. R.P. Baxter explained the arrangement between the Baxters and Sparks in a memo to a trust officer of a bank which acted as trustee of oil properties for the benefit of R.P. Baxter and his siblings. The memorandum stated:
 
 
 8
 Our active parties in our drilling ventures include Discovery Operating, Inc., Don Sparks, Brady Baxter, et al together with our financial and knowledgeable resources. We have teamed together in researching, evaluating and acquiring prime development oil and gas acreage in the more prolific oil and gas areas in Texas, Oklahoma and New Mexico.... Our group tries to concentrate their [sic] efforts on proven fields with offset acreage and new oil and gas fields where acreage acquired is either developed or close to the developed areas.
 
 
 9
 The active group derives their [sic] major share of income and increase of net worth from their [sic] heads-up participation on some basis with non-active investors to develop the leases assigned to drill for development of oil and gas income. The active members of the group are the largest investors for our group in each prospect to be drilled. The addition of non-active investors to invest with our group enables our group to have a larger capital basis in which to acquire more acreage in the more desirable oil and gas areas (emphasis added).
 
 
 10
 By the time the bloom left the rose, a total of 26 drilling ventures were involved.
 
 
 11
 In August 1985 the Baxters stopped paying their share of the drilling and operating expenses on the various properties. Repeated promises of payment were not fulfilled. A check for $75,000 given by Brady Baxter in February 1986 was dishonored for insufficient funds. In April 1986, Sparks and Discovery filed suit against R.P., Brady, and Colleen Baxter in state court in Midland, seeking damages for breach of contract and declaratory relief as to the status of the parties. The Baxters removed to federal court and counterclaimed for fraud, negligent misrepresentation, sale of unregistered securities, conspiracy to defraud, and violation of the Texas Deceptive Trade Practices-Consumer Protection Act. In January 1987, Sparks and Discovery amended their complaint to allege fraud by the making of false promises to pay and to seek foreclosure of operator's liens. Opposing counsel and the court received a copy. For some reason no copy was received by the clerk of court but the allegations and position are contained in the pretrial order and the deficiency became moot. The case proceeded to jury trial.
 
 
 12
 The jury awarded Sparks and Discovery $300,000 for breach of contract, $100,000 for fraudulent inducement, and $100,000 in punitive damages. No award was made to the Baxters on their counterclaims. The court entered judgment on the verdict except for the $100,000 for fraudulent inducement which it found duplicative of the breach of contract award. The court subsequently awarded Sparks and Discovery attorneys' fees of $143,193.38 and expenses of $21,362.50. The Baxters appeal.
 
 Analysis
 
 13
 1. Joint venture.
 
 
 14
 We first examine the challenge to the jury's finding that Sparks and the Baxters were joint venturers in their score-plus oil and gas projects.
 
 
 15
 The Texas Supreme Court has stated that a joint venture must include "a community of interest in the venture; and agreement to share profits; an agreement to share losses; and a mutual right of control or management of the enterprise." Ayco Development Corp. v. G.E.T. Service Co., 616 S.W.2d 184, 186 (Tex.1981) (citations omitted). An overlay of these factors to the case at bar requires that we first determine the nature of the enterprise undertaken by Sparks and the Baxters.
 
 
 16
 The above-quoted memorandum from B.F. Baxter presents a telling outline. The "active parties" research, evaluate, and acquire prime oil and gas acreage, and then market interests so as to cover or dramatically reduce the costs of their participation, the latter being referred to as "heads-up participation." The enterprise was not involved in operating the wells, that was a function of Discovery pursuant to operating agreements with the investors; but, rather, the enterprise put lease packages together and marketed them, retaining a portion at little or no cost.
 
 
 17
 The evidence supports the findings that there was a community of interest, an agreement to share gains and losses, and a mutual right of control. Sparks and the Baxters worked in tandem, with coordinated efforts. In the Reagan County transactions the Baxters arranged for potential investors, Sparks made the presentations, they both stood to gain or lose, and there was a mutuality of control of the activities. In the Reagan County exercise, Sparks and the Baxters received compensation in the form of both cash commissions and carried working interests. In seven other deals the Baxters received a carried working interest for their efforts in locating passive participants. And in all transactions, the securing of non-active investors reduced the ultimate unit costs for Sparks and the Baxters. The record clearly supports a finding of joint venture.
 
 
 18
 2. Claims of securities violations.
 
 
 19
 One of the Texas intermediate appellate courts recently ruled that "the existence of a joint venture among the interested parties is a defense to any cause of action arising under the Texas Securities Act." Dunbar v. R.K.G. Engineering, Inc., 746 S.W.2d 314, 316 (Tex.Ct.App., Texarkana 1988). In Dunbar, the court relied on reasoning of the Texas Supreme Court in the seminal Texas case on joint venturers, Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704 (1956). The Brown court announced that "a dissatisfied joint adventurer may not recover from other joint adventurers merely because of the failure of the latter to comply with the [Texas Securities] Act." Brown, 291 S.W.2d at 709 (citations omitted). Having concluded that the jury properly found that the arrangement between Sparks and the Baxters was a joint venture, we find no violation of the Texas Securities Act.
 
 
 20
 The Baxters urge, however, that despite the existence of a joint venture Sparks violated the Texas Securities Act because the transactions represented investment contracts. In Searsy v. Commercial Trading Corp., 560 S.W.2d 637 (Tex.1977), Texas adopted the elements of an investment contract which the Supreme Court had announced for such a contract under the federal securities legislation. S.E.C. v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The necessary elements include: a transaction, in which a person invests money, in a common enterprise, with an expectation of gain from the efforts of others. 560 S.W.2d at 640.
 
 
 21
 Apprised of these elements, the jury found no investment contract existed. Evidence abounds in support of this finding. We need not look beyond the fact that the evidence makes manifest that the Baxters had no expectation of profit solely from the work efforts of Sparks. Theirs was a joint effort.
 
 
 22
 The investment contract argument not only founders under Texas law, but it fails to meet the federal test. Youmans v. Simon, 791 F.2d 341 (5th Cir.1986); Williamson v. Tucker, 645 F.2d 404 (5th Cir.), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Under Youmans, a joint venturer's interest may be considered a security, for purposes of the federal securities laws, if:
 
 
 23
 (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or
 
 
 24
 (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or
 
 
 25
 (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.
 
 
 26
 Youmans, 791 F.2d at 346 (quoting Williamson, 645 F.2d at 424). The record reflects that the enterprise vested considerable power in the Baxters, including the selection of investors and the choosing of oil and gas properties. The record reveals the experience of the Baxters, particularly that of the senior Baxter, as a businessman, financier, entrepreneur, and oilman. Sparks brought to the enterprise relevant experience and expertise, but his ability was not unique, or so irreplaceable that it prevented the Baxters' exercise of meaningful venture powers. We perceive no securities violations, state or federal.
 
 
 27
 3. Breach of contract.
 
 
 28
 The Baxters signed operating agreements on each of the wells with Discovery. The agreements required the Baxters, as owners of working interests, to pay for certain expenses relating to the drilling and operation of the wells. All other working interest owners paid in advance, the Baxters were given the privilege of paying upon invoicing, after Discovery had incurred the costs. They took advantage of this prerogative by stopping payments entirely, albeit with regular promises to pay. The jury found this to be a breach of contract. So do we.
 
 
 29
 4. Fraudulent inducement to contract.
 
 
 30
 The Baxters promised payment not only of the expenses due on the existing wells, but also on new oil and gas leases that Sparks developed as late as December 1985. On these leases Sparks notified the Baxters that they could participate by signing letter agreements containing promises to pay acquisition costs at a later date. The Baxters signed the letters but did not honor the agreements. The jury found that the Baxters never intended to fulfill these written promises, and awarded $100,000 in compensatory damages and $100,000 in punitive damages. The district court disallowed the compensatory award, reasoning that the amount was subsumed by the compensatory award for breach of contract. We affirm the jury's findings, as appropriately adjusted by the trial court.
 
 
 31
 5. Punitive damages.
 
 
 32
 The Baxters challenge the award of punitive damages, contending that a party cannot recover punitive damages for breach of contract. This argument overlooks the provisions of Texas law that authorize the recovery of exemplary damages if a tort grows out of, is a part of, or is coincidental with a breach of contract, provided the tort is committed willfully and maliciously. Wilson v. Donze, 692 S.W.2d 734 (Tex.Ct.App.1985). In this case the jury found that the Baxters committed a tort willfully, with callous and reckless indifference to the rights of Sparks and Discovery. Under that finding, punitive damages were awardable and the jury's verdict must remain undisturbed.
 
 
 33
 6. Recovery of expenses.
 
 
 34
 The Baxters contend that the district court improperly awarded Sparks and Discovery an amount that represented expenses their attorneys incurred in litigating the case. The Baxters contend that the award included expenses, such as telephone calls, photocopies, travel expenses, delivery services and postage, that are not recoverable under Fed.R.Civ.P. 54(d) or any other federal rule or statute. This argument overlooks the fact that the court awarded attorney fees pursuant to Texas law. Tex.Civ.Prac. & Rem.Code Ann. Secs. 38.001-38.006 (Vernon 1986). But the contention is, nonetheless, valid. These expenses are not recoverable. As the court observed in Flint & Assoc. v. Intercon. Pipe & Steel, 739 S.W.2d 622, 626-27 (Tex.App.--Dallas 1987):
 
 
 35
 Ordinary expenses incurred by a party in prosecuting or defending suit cannot be recovered either as damages or by way of court costs in the absence of statutory provisions or usages of equity. Hammonds v. Hammonds, 158 Tex. 516, 313 S.W.2d 603, 605 (1958). The statute governing attorney's fees makes no provision for the award of expenses. See Tex.Civ.Prac.Rem.Code Sec. 38.001. (Vernon 1986). Testimony, furthermore, indicated that the expenses included substantial photocopy, travel, long distance, postage, and messenger expense.... Except as included in reasonable legal fees, there is no basis for recovery of such expenses under section 38.001.
 
 7. Liability of Colleen S. Baxter
 
 36
 The interrogatories to the jury failed to request an apportionment of the damages assessed against the Baxters. There was no objection voiced. Nonetheless, upon conclusion of our review of the record we are convinced that Colleen S. Baxter should not have been cast for the full amount of the award. She owned only a small interest in two programs. When suit was filed, she owed Discovery no more than $8,921.72. To prevent a miscarriage of justice, we exercise our authority under the plain-error doctrine and modify the judgment. Colomb v. Texaco, Inc., 736 F.2d 218 (5th Cir.1984). Appellees shall have judgment against Colleen S. Baxter for compensatory damages in the amount of $8,921.72, and the district court will enter a revised judgment accordingly.
 
 
 37
 We modify the judgment to reduce the amount for which Colleen S. Baxter is cast and to delete the award for the expenses of appellees' counsel, and as modified, the judgment on verdict and order is AFFIRMED.
 
 
 
 *
 District Judge of the Eastern District of Louisiana, sitting by designation